MARGARET WELCH, Admrx.,

*vs.*

LEWISTON, AUGUSTA & WATERVILLE STREET RAILWAY.

Cumberland.  Opinion June 6, 1917.

*Negligence.  Contributory negligence.  Doctrine of last clear chance.*
*Rule as to proximate cause.*

In a statutory action to recover damages for the instantaneous death of the plain-
tiff's intestate while she was attempting to cross the railroad track in front of a
closely approaching car.

*Held:*

1.  Foot passengers in crossing a street should carefully observe the movements
of street cars.  They should make such use of their senses as the situation
demands.  They cannot move blindly on, oblivious to everything about them
and then seek to throw upon others the blame that attaches only to them-
selves.

2.  The intestate, a woman seventy-one years of age and of defective hearing,
left the sidewalk and proceeded to cross the street, with her head bent down,
wholly inattentive to her surroundings.  She had a clear and unobstructed view
of the track for a distance of three hundred feet.  The car was in plain sight,
was approaching at a reasonable rate of speed, and was giving the customary
signals.  At a point four feet from the track she looked up and discovered the
car, paused, then gave a scream and started to cross in front of it, when she was
struck and killed.

3.  Far from exercising the care of an ordinary prudent woman under the same
conditions, she seems to have exercised no care whatever.  Her own conduct
precludes recovery.

4.  The so-called last clear chance doctrine does not apply.  Had the intestate
remained at the point outside the track when she discovered the approaching
car she would have been safe.  Her dash across the rails was clearly negligent
on her part and her contributory negligence continued to the very moment of
collision.  After she made the last fatal plunge the motorman was powerless
to save her.

5.  The verdict for the plaintiff was so contrary to the force of the evidence that
it cannot be allowed to stand.

Action on the case to recover damages for the instantaneous death of plaintiff's intestate through the alleged negligence of defendant company.  Defendant filed plea of general issue, and brief statement alleging that the accident and injuries to the plaintiff's decedent happened to her solely through her want of due care at the time and place of the accident to her, and that the accident and injuries to the decedent were caused solely through the contributory negligence of the decedent and through no want of due care on the part of the defendant acting through its servants and agents.  Verdict for plaintiff in the sum of $416.67.  Defendant filed motion for new trial. Motion granted.  Verdict set aside.

Case stated in opinion.

*Clarence E. Sawyer*, for plaintiff.

*Newell & Woodside*, for defendant.

SITTING:  SAVAGE, C. J., CORNISH, KING, BIRD, HALEY, HANSON, PHILBROOK, JJ.

CORNISH, J.   About 11.15 in the forenoon of August 12, 1915, the plaintiff's intestate, Ann Stover, in attempting to cross the tracks of the defendant company on Main Street in Freeport was hit by an electric car on its way from Brunswick to Yarmouth, thrown beneath the wheels and instantly killed.  In a statutory action to recover damages therefor the plaintiff obtained a verdict for four hundred and sixteen dollars and sixty-seven cents.  The case is before this Court on defendant's motion to set aside the verdict as against the evidence.

There was no substantial conflict of testimony and the facts seem to be these:  Main Street, at the point in question, runs a general northerly and southerly course, and  the electric car track is in the center of the highway.  On either side of the car track the street is macadamized for a distance of fourteen feet to a ditch at the edge of a grass plot beyond which is the gravel sidewalk.

In approaching the place of accident from Brunswick, beginning northerly a distance of six  hundred feet, there is first a rise of about two hundred and fifty feet, then a space of two hundred feet nearly level, and then a four per cent  down grade for one hundred and fifty feet.   About one hundred and twenty-five feet north of the point of collision, Chapel Street leads off to the easterly from Main Street,

and, opposite the point, Maple Avenue leads off to the westerly. The car in question left Brunswick at 10.45 A. M. and was due at Freeport Corner at a point a little beyond the place of accident at 11.15 A. M. It was on time. The conductor and motorman were experienced men.

Mrs. Stover was a woman seventy-one years of age and of defective hearing. Her home was in Brunswick. Her business was that of a peddler of small wares in the surrounding towns, and she had been accustomed to visit Freeport during the Summer for eight or ten years as often as once a week, going there on the electric cars and plying her trade from house to house. On the day in question she was in Freeport for that purpose. She was entirely familiar with the surroundings. Such is the general situation. The story of the accident is this.

The electric car was coming down the grade at a rate of eight or ten miles an hour. The motorman was at his post. The conductor was on the westerly side of the rear platform. The motorman first saw Mrs. Stover as she was leaving the sidewalk on the westerly side of Main Street just northerly of Maple Avenue and was stepping into the ditch or gutter. She was a stranger to him. She had a dress suit case in her hand and was walking quite fast. The motorman was then at a distance of one hundred and fifty feet and he at once sounded the gong and continued to ring it. She proceeded diagonally across the street in a southeasterly direction with her head bent down, and when she had reached the middle of the macadamized surface between the gutter and the tracks the motorman immediately applied the emergency brake. She apparently did not hear the gong nor the approaching car. The speed had been reduced to about four miles an hour. She continued her course and when she was within about four feet of the outer rail she looked up for the first time, discovered the car with a surprised look, hesitated or partially stopped. Then she gave a scream and started to run across directly in front of the car which was then almost upon her. The motorman let go the handles, leaned over the fender and endeavored to seize and rescue her, but he simply got hold of her shawl. She was thrown down and one set of the forward wheels on the easterly side passed over her. The car stopped within ten feet after the collision.

Only one conclusion can properly be drawn from this recital, and that is that Mrs. Stover's own reckless conduct was the proximate cause of the accident. Foot passengers in crossing a street should carefully observe the movements of street cars. They should make such use of their senses as the situation demands. They cannot move blindly on, oblivious to everything about them and then seek to throw upon others the blame that attaches only to themselves. Yet that is what this intestate did. This was neither a regular street crossing nor a street junction. It was a place of known danger. Her sense of hearing being defective, a fact known to herself, but not to the operatives on the car, she should have relied the more upon her sense of sight. Evidently she was engrossed in her own thoughts and moved across the street absolutely inattentive and without making the slightest effort to ascertain whether or not a car was approaching. She had a clear and unobstructed view after she reached the macadamized street for three hundred feet or more, in the direction from which the car was coming. It was in plain sight. It was giving the customary signals of warning. Its speed was reasonable. But she continued heedlessly on her course. At a point four feet from the track she aroused herself and comprehended the situation. She paused. Had she stopped even then she would have been safe, but she made the last fatal plunge in her effort to cross in front of the car and rushed to her death. We can hardly conceive of a state of facts in which contributory negligence could stand out more vividly than here. For from exercising the care of an ordinarily prudent person under the same conditions, she seems to have exercised none. Her own conduct precludes recovery. *Butler* v. *Street Railway*, 99 Maine, 149; *Denis* v. *Street Railway*, 104 Maine, 39; *Emery* v. *W. F. O. Ry. Co.*, 95 At., 892, 114 Maine, 547; *Donovan* v. *Lynn & Boston R. R.*, 185 Mass., 533; *Fitzgerald* v. *Bos. El. Ry.*, 194 Mass., 242; *Plympton* v. *Same*, 217 Mass., 137; *Welch* v. *Ry. Co.*, 223 Mass., 184;

Under the statute and the pleadings the burden of proving contributory negligence rested upon the defendant. R. S., (1916), Chap. 87, Sec. 48; *Curran* v. *Railway Co.*, 112 Maine, 96. That burden is sustained by overwhelming proof.

The plaintiff however sets up the last clear chance doctrine, as a basis of recovery, but that doctrine has no application under the facts of this case. The vital question in that class of cases is this,

do the facts show that subsequent to the plaintiff's contributory negligence and independent of and apart from any prior negligence of its own, the defendant was culpably negligent, and that this subsequent negligence was the proximate cause of the accident. Where this question has been answered in the affirmative, the last clear chance doctrine has been applied, as in *O'Brien* v. *McGlinchy*, 68 Maine, 557; *Atwood* v. *St. Ry. Co.*, 91 Maine, 399; *Conley* v. *R. R. Co.*, 95 Maine, 149; *Ward* v. *R. R. Co.*, 96 Maine, 136; *Curran* v. *Ry. Co.*, 112 Maine, 96. On the other hand where the facts give this question a negative answer the doctrine has not been applied, as in *Butler* v. *Railway Co.*, 99 Maine, 149; *Denis* v. *Railway Co.*, 104 Maine, 39; *Malia* v. *Railway Co.*, 107 Maine, 95; *Philbrick* v. *Railway Co.*, 107 Maine, 429; *Moran* v. *Smith*, 114 Maine, 55.

In the case at bar the intestate could have stopped at any moment and in fact did pause when within four feet of the track with the approaching car only eight or ten feet away. Had she remained there, all would have been well. But she then started and dashed directly across the track. That was clearly negligent on her part and her negligence continued to the very moment of collision. There was not an instant of time when her negligence can be said to have ceased and when the defendant subsequent to that was guilty of culpable negligence. After Mrs. Stover made the last fatal rush, the motorman was powerless to save her.

The verdict of the jury under the well settled rules of law was so contrary to the force of the evidence that it cannot be allowed to stand.

*Motion granted.*
*Verdict set aside.*