### MARY LOUISE MAHAN, Adm'r'x

*vs.*

### WALKER D. HINES, Director General of Railroads.

### Penobscot.    Opinion October 22, 1921.

*Unless a case where negligence is presumed from the nature of the accident, there must be some competent evidence of the defendant's lack of care and that it contributed as a proximate cause of the injury, unless the case comes within the rule of res ipsa loquitur. But this rule does not go so far as to supply the necessity of proof as to how an injury occurred. Where it is sought to establish a case upon inferences drawn from facts, it must be from facts proven. Inferences based on mere conjecture or probabilities will not support a verdict.*

The evidence discloses that the plaintiff's intestate was clearly guilty of contributory negligence in case his injuries resulted from attempting to alight or falling from the train in which he was riding.

Unless a case where negligence is presumed from the nature of the accident, there must be some competent evidence of the defendant's lack of care and that it contributed as a proximate cause of the injury. This case is barren of evidence that any lack of care on the part of the Railroad Company contributed to the deceased's injuries and the plaintiff must therefore fail unless she can bring the case within the rule of *res ipsa loquitur.*

But this rules does not go so far as to supply the necessity of proof as to how an injury occurred. It is only when the circumstances are known that the thing itself can speak. The mere proof that an accident occurred raises no such presumption, or if occurring under conditions in which persons are frequently injured without negligence on the part of the defendant.

This rule is not modified in a case where the plaintiff is by statute presumed to be himself in the exercise of due care. An arbitrary rule as to the burden of proof does not change the common experience of mankind on which the presumptions of negligence as a basis for this rule are founded.

And since the deceased's exposure to the peril which resulted in his death was in the first instance due to his own negligence, it would be extending the doctrine of "last clear chance" too far to apply it to a case where the only proof of later and independent negligence on the part of the defendant is the bare inference that since a fatal accident occurred through the deceased being struck by a locomotive running in the usual manner on a track where persons were not accustomed or allowed to use as a thoroughfare, even though the servants of the Railroad Company operating the locomotive were aware that a man had disappeared from a train which had but a short time before passed over the track on which they were then running, the Railroad Company must or in the exercise of due care should have discovered the deceased's peril in time to have avoided the accident, especially when the case is entirely devoid of evidence as to what the real nature of that peril was.

When it is sought to establish a case upon inferences drawn from facts, it must be from facts proven. Inferences based on mere conjecture or probabilities will not support a verdict.

On motion for new trial by defendant. This is an action on the case for alleged negligence on the part of the defendant, under Chap. 87, Sec. 48 of the R. S., and the jury returned a verdict for plaintiff for $5000 in the Superior Court in Penobscot County.

Motion sustained. New trial granted.

Case is fully stated in the opinion.

*Clinton C. Stevens, and Sidney Stevens,* for plaintiff.

*Frank P. Ayer, Henry J. Hart, and George E. Thompson,* for defendant.

SITTING: CORNISH, C. J., SPEAR, PHILBROOK, DUNN, WILSON, DEASY, JJ.

WILSON, J. The plaintiff's intestate, somewhat under the influence of liquor, was riding on a passenger train on the Bangor and Aroostook Railroad from Patten to Millinocket where it arrived about 9 P. M. He left his seat in the smoking car, when the train stopped

by reason of a semaphore or block signal just outside the railroad yard and about a mile north of Millinocket station, and made his way to the vestibule in the rear of the smoking car. With the exception of the forward baggage car, it was what is known as a full vestibule train, and consisted, in addition to the engine and tender, of two baggage cars, the smoking car, a passenger coach, and Pullman car. The side vestibule doors of the smoking car closed at the top of the steps with a common catch or fastening, and were secured by a bar which was raised or lowered from the inside.

As he passed out, he was advised by friends who saw his condition, not to go out there. But disregarding this advice, he went out into the vestibule and was last seen alive just as the train was starting, standing facing the side vestibule door which was closed, with his hands on each side, and looking out.

The train stopped at the semaphore but a few seconds, and soon after it started it was discovered he had disappeared.

His friends went back into the vestibule to look for him and there met the brakeman who was then coming through the train from the rear where it was his duty to go with a flag or lantern whenever the train stopped between stations, and was announcing Millinocket as the next station, the train being then in the railroad yard and nearing the station.

One of the friends of the deceased asked the brakeman if he had seen the deceased, to which the brakeman replied, he had not. Then the friend said: "If he is not in there," referring to the passenger coach, "he has gone off," meaning that he had jumped or fallen from the train.

The brakeman then went back through the passenger coach, and not finding him on the arrival of the train at Millinocket station, notified the assistant yard master who was then in charge of the yard, that it was reported that a man had jumped or fallen from the train at the northerly end of the yard. The railroad yard according to the evidence which is somewhat vague on this point, at least extended northerly from the station about three-quarters of a mile to Millinocket stream, crossed by a bridge, the semaphore being about one-fourth of a mile farther north.

Two engines, "running light," that is, without cars attached, were waiting the arrival of the passenger train before proceeding north over the main line. The assistant yard master, with another

employee, taking a lantern, walked as far as the bridge at the northern end of the yard, the engines following slowly behind them. The engineers and firemen had been apprised of the purpose of the yard master's journey up the yard. On finding no traces of the deceased, the yard master gave the signal for the engines to proceed on their way.

Shortly afterwards friends of the deceased who had been notified of his disappearance, went up the track beyond the bridge, and for nearly a mile beyond the semaphore, but found no traces. They, however, had no light, and while it was clear, there was no moon, nor any lights above the bridge.

They were followed by an undertaker and his assistant who had also been notified, who with a lantern and searchlight made a more careful search, which resulted in finding a short distance north of the semaphore, estimated by them to be about one hundred feet, the deceased's hat and one rubber. About a quarter of a mile still farther north of the semaphore, they found just inside the right hand rail two drops of blood, and from this point on northerly they continued to find parts of his body, until at a distance of two or three miles beyond the semaphore they found the remains horribly mangled. Along the right hand rail at each joint were mute evidences indicating clearly that his body either dead or alive had been struck or picked up about a quarter of a mile north of the semaphore by the engines running north, and had been dragged along the track until it had been shaken loose at a switch some two or three miles beyond.

The conductor of the train on arriving at Bangor examined the running gear of the passenger and Pullman coaches, and found considerable blood and flesh frozen on the rear trucks of the passenger coach and on the forward trucks of the Pullman car which was next in the rear, but whether animal or human was not shown.

The case was submitted to the jury which found a verdict for the plaintiff in the full sum allowed by the statutes of the State, and the case now comes before the court on a motion for a new trial on the usual grounds. We think the motion must be sustained.

While the plaintiff in the case is relieved under the statutes of the burden of proving that no lack of care on the part of the deceased contributed to his injury, she still has the burden of showing by some competent evidence that it was due to the negligence of the defendant. A verdict of a jury on matters even within their own province

cannot be the basis of a judgment where there is no evidence to support it. *Day* v. *Railroad*, 96 Maine, 207, 216. A verdict cannot stand based on mere conjecture.

The plaintiff's contention is that hearing the announcement at the last station before the stop at the semaphore that the next station was Millinocket, the deceased had a right to assume that he had arrived at his station when the stop was made at the semaphore; and as he was attempting to alight, the sudden starting of the train either threw him off, or he jumped and was in some way left injured or dazed beside the track and in a helpless condition, and was picked up by one of the engines going north and thus came to his death. If the jury's verdict was based on such a theory it is clearly wrong.

There was nothing which could be properly construed as negligence on the part of the railroad prior to the deceased's disappearance. On the other hand, the evidence clearly shows that he was himself guilty of contributory negligence, and if his death resulted from an injury received when he jumped or fell from the train, the plaintiff, was not entitled to a verdict.

If he was not killed by the passenger train when he went off, but was killed by one of the engines while lying in an injured or dazed condition beside the track, his negligence must be held to have continued, and the plaintiff would be precluded from recovering, unless some independent negligence of the Railroad intervened under the doctrine of the "last clear chance."

So far as there is any evidence in the case, however, it indicates that he jumped or fell from the train almost immediately after it started. The location of his hat and rubber approximately within one hundred feet of the semaphore fairly warrants the conclusion that he did not get off at the point where the rear of the smoking car stood when the train stopped, there being two baggage cars and the engine ahead of the smoking car, and, further, if he was not then injured beyond the power of locomotion, he was at least somewhat shaken up and dazed or was even more under the influence of liquor than his friends realized. One does not, when normal, wander about long, hatless, in January, with the thermometer registering below zero, as the evidence discloses the weather conditions were on the night of the accident.

The careful examination of the ground between the point where the first blood spots were found and the bridge, by the undertaker and his

assistant, indicates quite conclusively that the flesh and blood found on the trucks of the passenger coach and Pullman car was not that of Thomas Mahan, and the finding of the first traces of any severe injury nearly a quarter of a mile north of the stopping place of the train would seem to indicate so far as the evidence permits, the drawing of any inference not based solely on conjecture, that he had in some way made his way up the track to this point and had either fallen on the track or was struck by one of the engines going north and thus came to his death.

His going off the train being the result of his own negligence, the Railroad no longer owed to him the same duties as when a passenger in the exercise of due care. Still it is urged it owed him the duty, after notice of the manner of his disappearance, of taking proper precautions to avoid injuring him in case he had fallen on the track or in a dazed condition might stray thereon and be hit by later passing trains. *Cincinnati, I. & St. R. Co.* v. *Cooper*, 120 Ind., 469; *Cincinnati, H. & D. R. Co.* v. *Kassen*, 49 Ohio St., 230. *Brice* v. *So. Railway Co.*, 27 L. R. A. (N. S.), 768. This duty on the part of a railroad may be fulfilled by stopping the train, if notice of the accident is immediately communicated to the trainmen, and can be done without jeopardizing the safety of the other passengers, or by reporting it at the next station in order that other trains may be notified, and take proper precautions.

We think the Railroad was not remiss in its duty in this respect. The accident occurred, at farthest, within a mile of the station. It does not appear that the deceased's disappearance was reported to the brakeman until the train was in the railroad yard and nearing the station. It was then reported conditionally. By the time the brakeman had been through the passenger coach, it was a sufficient compliance with the Railroad's duty to the deceased to report the affair to the yard master on the arrival at the station.

It is further urged that under all the circumstances the brakeman should have connected the disappearance of the deceased with the stop at the semaphore, but the report was made to him after the train had arrived in the yard, and not that he, the deceased, had stepped off while the train was stopped, but that he had "gone out," or as one of the witnesses put it had "fallen off." But assuming that he should have inquired more particularly and should have told the yard master that it might have occurred up near the semaphore, there

is no evidence, and it is, therefore, only a matter of conjecture, that the communication of that information could have averted the fatal injury.

At least a half-hour must have elapsed after the plaintiff's intestate's disappearance from the train before the yard master could have reached the semaphore, if he looked about with any degree of care. Where Mahan was at that time is likewise a matter of conjecture upon the evidence in the case. He may have been lying beside the track a quarter of a mile farther north, or walking about in a dazed and aimless way. It cannot be presumed that the yard master would have even found his hat and rubber. Others searching for traces overlooked them.

In short, the case is absolutely barren of proof of that essential element that the deceased met his death through the negligence of the servants of the Railroad Company. Unless a case where negligence is presumed from the nature of the accident, there must be some competent evidence of the defendant's lack of care, and that it contributed as a proximate cause to the injury complained of. In the case at bar, proof of any remissness on the part of those operating the engines running north is entirely wanting, as is all direct evidence of how the unfortunate accident actually occurred.

Lacking proof of negligence on the part of the Railroad that contributed to the injury, the plaintiff must fail unless she can bring the case within the class of cases where negligence is presumed from the fact of the injury, and the rule of *res ipsa loquitur* applies. This presumption does not really arise so much from the fact of injury, but rather from the manner in which the injury occurred. Where the injury arises from some unusual occurrence which ordinarily would not happen if due care is observed, the probabilities that such an occurrence would not have happened, if ordinary care had been observed, are held to be strong enough to support a presumption of negligence without further proof on the part of the plaintiff, unless, of course, rebutted. 20 R. C. L. 187. *Guthrie* v. *M. C. R. R. Co.*, 81 Maine, 572. But this doctrine does not go so far as to also supply the necessity of proof as to how the injury occurred. It is only when the circumstances are known that the thing itself can speak. The mere proof that an accident occurred raises no such presumption, or if occurring under conditions in which persons are frequently injured without negligence on the part of the defendant. *Smith* v. *M. C. R. R.*,

87 Maine, 339, 347. Certainly it is not the common experience that when persons are injured on the tracks of a railroad, where they have no right to be, that it is due to the negligence of the Railroad Company.

Nor do we think this rule is modified in a case where the plaintiff is by statute presumed himself to have been in the exercise of due care. An arbitrary rule as to the burden of proof does not change the common experience of mankind on which the presumptions of negligence in this class of cases are based. In any event, the deceased's exposure to the peril which resulted in his death being clearly due to his own negligence, it would be extending the doctrine of the "last clear chance" too far we think, to apply it to a case where the only proof of any later and independent negligence on the part of the defendant is the bare inference that, since a fatal accident occurred through the deceased being struck by a locomotive running in the usual manner over a track which persons were not accustomed or allowed to use as a thoroughfare, even though the servants of the Railroad Company operating the locomotive were aware that a man had disappeared from a train recently passing on the track on which they were then running, the Railroad Company must or, in the exercise of due care, should have discovered the deceased's peril in time to have avoided the accident; especially when the case is entirely devoid of evidence as to what the real nature of that peril was.

When it is sought to establish a case upon inferences drawn from facts, it must be from facts proven. Inferences based on mere conjecture or probabilities will not support a verdict. *Alden* v. *Railroad Co.*, 112 Maine, 515; *Nason* v. *West*, 78 Maine, 253, 256.

*Motion sustained.*
*New trial granted.*