MARJORIE SHAW *vs.* CHARLES CLIFFORD BOLTON.

Cumberland.    Opinion February 9, 1923.

*The "look and listen" rule of law is well established and reasonable, as relates to*
*steam railroad crossings, but is not applicable to either street railway*
*crossings, or ordinary street crossings.*

Public convenience imperatively demands that steam railroad trains be heavy and
    swift.   Such trains cannot ordinarily be kept under control so as to be stopped
    at street crossings.   But there can be no hard and fast rule that a foot passenger
    about to cross a street must as a legal duty look and listen.

The only legal rule that can be laid down is that when entering upon crossings,
    and at all times while traversing them, foot passengers shall exercise due care,
    to wit, such care as an ordinarily prudent and careful person exercises under
    like circumstances.

A foot passenger is not legally obliged to look and listen upon reaching a silent
    policeman located at or near the center of the street.   In congested streets this
    may be manifestly the only course consistent with due care.   The test is what
    ordinary prudence demands.

On exceptions by plaintiff.   An action to recover damages for
personal injuries sustained by plaintiff by being struck by defendant's
automobile while crossing Cumberland Avenue on the westerly cross-
walk at its intersection with Preble Street in the city of Portland.

The sole question in controversy was that of the contributory
negligence of the plaintiff, the negligence of the defendant being
abundantly shown by the testimony.   The case was tried to a jury
and at the conclusion of the testimony for the plaintiff, counsel for
defendant moved for a nonsuit which was granted, and plaintiff
excepted.   Exceptions sustained.

The case is fully stated in the opinion.

*Verrill, Hale, Booth & Ives,* for plaintiff.

*Bradley, Linnell & Jones,* for defendant.

SITTING:  CORNISH, C. J., SPEAR, HANSON, DUNN, MORRILL, DEASY, JJ.

DEASY, J.  On exceptions to order of nonsuit.

From the evidence a jury would have been justified in finding the following facts:  After dark on the evening of October 11, 1921 the plaintiff and her sister were walking northerly on Preble Street Portland, carrying between them a large pasteboard box containing dishes.  Reaching the junction of Cumberland Avenue and Preble Street, the plaintiff looked to the right and left, saw no cars on Preble Street, two or three coming from the west on the Avenue, but none coming from the east.

They stepped off the sidewalk on to the crossing and again the plaintiff looked and saw no car approaching in a westerly direction. They then proceeded to cross the Avenue.  When they had reached a point a few feet northerly of the center, at which point a silent policeman was located, the plaintiff was knocked down and injured by an unlighted automobile which was being driven by the defendant westerly along the Avenue at the rate of twenty-five miles an hour. The plaintiff did not see the defendant's automobile until it struck her.

In granting a nonsuit the presiding Judge said that the testimony was abundant to prove the defendant's negligence.  We concur in this conclusion.  The learned counsel for the defendant do not by their brief contend otherwise.

The sole controversy relates to the plaintiff's contributory negligence.  The case involves the respective rights and duties of motorists and pedestrians at street crossings.

The defendant contends that the "look and listen" rule applies in case of foot passengers about to use street crossings and further that where a so-called silent policeman is maintained, the way is in effect divided into two parallel adjacent streets so that when the pedestrian has reached the center he is under legal obligation to again look and listen at all events for vehicles approaching from his right.

But the "look and listen" rule as a rule of law does not apply to ordinary street crossings.

The rule as relates to steam railroad crossings is well established and reasonable.  Public convenience imperatively demands that steam railroad trains be heavy and swift.  Such trains cannot ordinarily be kept under control so as to be stopped at street crossings.

But the rule does not apply even to street railway crossings. *Marden* v. *Railway*, 100 Maine, 41. *Driscoll* v. *Railway*, 159 Mass., 146.

With greater reason there is and can be no hard and fast rule that a foot passenger about to cross a street must as a legal duty look and listen. Thousands of streets and roads, some crowded with motors, others infrequently used by them, are being crossed by pedestrians every minute in the day. Each instance presents its own problem.

The only legal rule that can be laid down is that when entering upon crossings and at all times while traversing them foot passengers shall exercise due care, to wit, such care as an ordinarily prudent and careful person exercises under like circumstances. Under some conditions it may be manifestly negligent to cross a street without first looking and listening. Under some conditions it may be negligent to fail to look and listen again when reaching the center of the street especially when the center is marked by a silent policeman. But what ordinary care and prudence demands and whether the conduct of the traveler conforms to such demand are questions of fact to be left to the judgment of a jury.

"There is no absolute rule of law that to be in the exercise of due care one about to cross a public street must look and listen for approaching vehicles." *Hall* v. *Railway*, 168 Mass., 461.

"It cannot be ruled as a general proposition of law that a traveler is necessarily negligent because he attempts to cross a street even without first looking or listening to ascertain whether a vehicle is approaching." *Rogers* v. *Phillips*, 206 Mass., 308.

"The degree of care and prudence to be exercised by him (foot passenger crossing street) is measured by the care and prudence of a prudent man in like circumstances and whether he exercised due care measured by this rule was a question for the jury." *Hammond* v. *Harjohn*, (Vt.), 115 At., 100.

"When a pedestrian is about to cross a street he must use the care of a prudent man, but the law does not undertake to further define this standard. The law does not say how often he must look or precisely how far or when or from where." *Aiken* v. *Metcalf*, (Vt.), 97 At., 669.

The opinion of this court in *Wetzler* v. *Gould*, 119 Maine, 276 is in harmony with the above authorities. It recognizes as the final test what would be done by "an ordinarily careful and prudent person, under like circumstances, having in mind his own safety."

See to same effect: *McDonald* v. *Bowditch,* 201 Mass., 339; *Donovan* v. *Bernhard,* 208 Mass., 181; *Lynch* v. *Rubber Co.,* 209 Mass., 16; *Undhejem* v. *Hastings,* (Minn.), 38 N. W., 488; *Orr* v. *Garabold,* (Ga.), 11 S. E., 778; *Adler* v. *Martin,* (Ala.), 59 S. 597; *Rump* v. *Woods,* (Ind.), 98 N. E., 369.

There are authorities holding that a pedestrian who attempts to cross a street without looking is as a matter of law barred of recovery. *Knapp* v. *Barrett,* (N. Y.), 110 N. E., 428. Even under the doctrine of such cases when the pedestrian has once looked and found the way clear "he is not bound as a matter of law to look again." *Knapp* v. *Barrett,* supra. Huddy on Automobiles, Section 462.

But the sounder and better doctrine is that above stated. The railroad crossing rule of law has no application. Whether pedestrians and motorists in exercising their mutual and equal rights on street crossings use due care is a question of fact.

But granting, says the defendant, that the look and listen rule of law does not apply, still the facts in this case are such as to charge the plaintiff with negligence as an inescapable conclusion of fact. It may well be that if she had blindly, heedlessly, without looking for approaching vehicles, attempted to traverse, in the dark, that much used and dangerous crossing, she would have been so manifestly negligent, that a jury verdict exonerating her would be set aside.

But the plaintiff says that she looked. With reference to looking when she reached the center of the street her story is confused and contradictory, but her testimony that she looked both ways before stepping off the sidewalk and just afterward is positive and explicit.

The defendant, however, rejoins that the plaintiff's testimony on this point cannot be true or that if she did look, it was casually, perfunctorily and not with a seeing eye because he says that two witnesses standing upon the corner toward which she was walking saw the defendant's approaching automobile,—though their opportunitites for seeing were no better than the plaintiff's.

Undoubtedly this testimony has some tendency to discredit or at all events to weaken that of the plaintiff. Its weight, however, should be determined by a jury. Failure on the part of the plaintiff to see the defendant's unlighted car, while others saw it, does not necessarily disprove her story. She was not bound to anticipate the coming of an unlighted car at a rate of speed illegal even for a car with headlights burning. She was bound to obey the law and could properly

assume that no automobile driver would violate more than one law at a time.    With eyes and mind focussed upon distant auto lights she might well overlook a nearer dark object.    The court will not undertake to determine whether or not the plaintiff exercised due care, but we think that a verdict for the plaintiff upon the evidence before us would not have been so manifestly erroneous as to require reversal.

*Exceptions sustained.*