EDGAR H. STURTEVANT, Admr.

*vs.*

JOSEPH E. OUELLETTE

Androscoggin.    Opinion February 7, 1928.

*The operation of a motor vehicle at a speed in excess of the statutory limit is evi dence of negligence but not conclusive proof.*

*A driver of an automobile in the public ways in using due care must exercise so high a degree of dilligence in observing the rights of a foot passenger or team when approaching them as to enable him to control it or stop it, if necessary, to avoid a collision which cannot be regarded as a pure accident or due to contributory negligence.*

*Failure by a pedestrian about to cross a street to look or listen for approaching automobiles may be strong evidence of his lack of due care, but it cannot be said as an absolute rule of law that he is bound to take such precaution.*

*The real test is, what would be done by an ordinarily careful and prudent person under like circumstances, having in mind his own safety.*

This case is peculiarly one for the jury. The human element of credibility is involved to a marked degree. A finding that the defendant was negligent and the plaintiff was in the exercise of due care would not be so clearly erroneous as to require reversal.

On exceptions. The plaintiff's intestate was hit by an automobile while attempting to cross Elm Street in Waterville, and received fatal injuries. This action was brought to recover damages for the benefit of the widow and children of the deceased, under R. S. Chap. 92, Sec. 9. At the conclusion of the evidence the presiding Justice directed a verdict for defendant and plaintiff excepted. Exception sustained. The case fully appears in the opinion.

*Gordon F. Gallert and Frank T. Powers,* for plaintiff.

*Robert A. Cony,* for defendant.

SITTING: WILSON, C. J., PHILBROOK, DUNN, DEASY, STURGIS, PAT-
TANGALL, JJ.

STURGIS, J.   The plaintiff's intestate, Arthur H. Sturtevant, while
crossing Elm Street in the city of Waterville on the evening of Oc-
tober 23, 1925, was struck by the defendant's automobile and died
without conscious suffering.   This action is brought to recover dama-
ges under R. S., Chap. 92, Sec. 9.

The case is before this Court on exceptions to the order of the pre-
siding Justice directing a verdict for the defendant.   It is the duty
of the Court, therefore, simply to determine whether upon the evi-
dence the jury could properly have found for the plaintiff.   "If there
was evidence which the jury were warranted in believing, and upon
the basis of which honest and fair minded men might reasonably
have decided in favor of the plaintiff, it is reversible error to take the
issue from the jury."   *Johnson v. N. Y., N. H. & H. R. R.,* 111
Maine, 263, 265.

A careful examination of the evidence discloses these facts.   Elm
Street in Waterville is a heavily travelled main thoroughfare about
fifty feet wide at its intersection with Western Avenue coming in
from the west.   About six o'clock on the evening of October 23, 1925,
the plaintiff's intestate came down Western Avenue with one Al-
phonse Pelletier and stopped at the edge of the sidewalk in the north-
west corner of the intersection:   From this point his view up and down
Elm Street was practically unobstructed.   The defendant was then
driving up Elm Street, approaching the intersection from the south.
His view ahead in the street, including the sidewalk where the de-
ceased stood, was likewise unobstructed.   The plaintiff left the side-
walk and attempted to cross Elm Street and was struck down by the
defendant's automobile, dying without conscious suffering as a result
of the collision.   These facts are not in dispute.

There is a sharp conflict of testimony, however, upon the question
of what actually took place.   The companion of the deceased, Mr.
Pelletier, was called by the plaintiff, and his account of the accident
as stated upon the stand is, that after standing at the sidewalk edge
for a few moments the deceased started to walk acrosss Elm Street on
the crosswalk while the witness turned down Elm Street.   He says,
that attracted by the sound of the horn and glare of the headlights

of the defendant's on-coming car, he shouted to the deceased "look out, a car coming," and threw up his arm as a warning. He says the automobile was traveling at a speed of thirty miles an hour; and he places the deceased, when he gave the warning, as near the outer car track, fixed by the engineer as about thirteen feet east from the sidewalk where the men parted.

James Barnes, a medical student, came down Western Avenue just behind Mr. Sturtevant and Mr. Pelletier. He testifies that the men parted at the edge of the sidewalk as described by Mr. Pelletier; the deceased started across Elm Street and on reaching the middle of the car track started to hurry; he says Mr. Sturtevant continued on to the middle of the street "when it seemed as though the right front fender of the automobile hit him in the abdomen." This witness saw the accident. And while there is testimony impeaching the account of the accident given by Mr. Pelletier, this statement of the occurrence by Mr. Barnes, while contradicted by the defendant's witnesses, is unimpeached.

The witnesses for the defendant say that the deceased had been drinking some alcoholic beverage—the kind and amount, however, is not disclosed. They say, that driving along Elm Street on the car track in the middle of the street 150 feet away from Western Avenue, the deceased was visible as he stood at the edge of the sidewalk, and when the car reached a point 10 to 25 feet from the deceased he suddenly, although restrained by his companion, pulled away and started to stagger with uplifted hands across the street, and, in spite of the defendant's swerving of his car to the left, ran into the right side of the automobile, breaking the windshield with his hand and tearing off the tire carried on the right running-board as he fell backward. They assert that the defendant was driving slowly, but admit that the car, an open touring model, had its sides curtains up along the entire right side, the side towards the sidewalk from which the plaintiff walked into the street.

These in brief are the facts in evidence. Is a finding of negligence based on this evidence clearly wrong? Is contributory negligence proved? Unless both these questions as a matter of law can be answered in the affirmative, the issue is one of fact and the case should be submitted to a jury.

Elm Street, as already stated, is a main thoroughfare. There is evidence that the deceased was attempting to cross on an established crosswalk; that the defendant was driving his car thirty miles an hour on the car track in the middle of the street with side curtains up the length of the right hand side of the car. It is not an impossible inference that the curtains made a "blind corner" to the right, cutting off the driver's vision to the right almost to the moment of contact. Speed in excess of the statutory limit is evidence of negligence, —not conclusive proof, but evidence to be considered. *Fernald* v. *French*, 122 Maine, 565. This portion of the city of Waterville was compact. The speed limit was fifteen miles an hour. Public Laws 1921, Chap. 211, Sec. 62.

With the increase in automobiles and the present development of higher power and increased speed, application of the salutory rule stated in *Savoy* v. *McLeod*, 111 Maine, 234, is now even more imperative than when laid down: "The driver of an automobile in the public highways, constantly travelled by pedestrians and teams and occupied by children of ages, should, to establish due care, exercise so high a degree of diligence in observing the rights of a foot passenger or team when approaching them, as to enable him to control it, or stop it if necessary, to avoid a collision, which cannot be regarded as a pure accident or due to contributory negligence." The care to be exercised by the driver of an automobile on the public streets must be "commensurate with the danger to be avoided." *Savoy* v. *McLeod*, supra; *Day* v. *Cunningham*, 125 Maine, 328. At crosswalks established for the passage of pedestrians, of common knowledge so used and likely to be used, this measure of care demands an increased vigilance on the part of the driver. 2 R. C. L., 1184. If such vigilance is lacking the care is not commensurate with the known danger to be avoided. Upon the evidence in the record we cannot say that a finding of negligence on the part of the defendant would be clearly erroneous.

Upon the issue of contributory negligence, the deceased by statute is presumed to be in the exercise of due care. R. S., Chap. 87, Sec. 48. Contributory negligence was properly pleaded, but the statute also requires that it be proved. *Curran* v. *Ry. Co.*, 112 Maine, 96.

Rejecting the testimony of the witness Pelletier because of doubt of its credibility growing out of his alleged inconsistent statements,

Vol. 126—37

we find the witness Barnes placing the deceased in the middle of the street when struck, indicating that he had travelled approximately 25 feet after leaving the sidewalk. There is evidence fixing the defendant's speed at thirty miles an hour. His approach at that rate of speed was 44 feet per second. Reason dictates that assuming the correctness of the Barnes statement and the alleged rate of speed, the defendant's car was 150 to 200 feet away when the deceased left the curb. He "had the right to assume that approaching motorists would obey the law." "His (the pedestrian's) failure to anticipate negligence on the part of the driver of a motor vehicle does not render him negligent as a matter of law." *Day* v. *Cunningham,* supra. To paraphrase, he did his full duty if he waited until it reasonably appeared that a prompt crossing could be safely effected if approaching automobiles were lawfully managed and controlled. *Wetzler* v. *Gould,* 119 Maine, 276; *Day* v. *Cunningham,* supra. It cannot be said as an absolute rule of law that a pedestrian about to cross a street is bound to look or listen for approaching automobiles. *Shaw* v. *Bolton,* 122 Maine, 232. His failure to take this precaution before entering the highway may, however, be strong evidence of negligence. *Day* v. *Cunningham,* supra. The test is, "what would be done by an ordinarily careful and prudent person under like circumstances, having in mind his own safety?" *Wetzler* v. *Gould,* supra. The law does not say that he must look or how often, or "precisely how far, or when, or from where." *Shaw* v. *Bolton,* supra.

The burden of proof is upon the defendant to prove contributory negligence. Upon the testimony of the witnesses for the defendant alone such a finding might stand. A finding to the contrary, however, based on the physical facts and the testimony of the plaintiff witness Barnes would not have been so clearly wrong as to require reversal of a verdict. A jury might find that the defendant's automobile was down the street such a distance when the deceased left the curb that an ordinarily prudent man would have deemed it safe to attempt the crossing.

The case is peculiarly one for the jury. The human element of credibility is involved to a marked degree. The sound judgment of twelve men under the clear rules of law can well measure the facts in the light of probabilities and human experience. It should be submitted to them.

*Exceptions sustained.*