BEAUCAGE *vs*. HUGH ROAK, AS GEORGE M. ROAK & Co.

Androscoggin.    Opinion March 4, 1931.

*Jacob H. Berman,*
*Edward J. Berman,*
*Benjamin L. Berman,*
*David V. Berman,* for plaintiff.
*Verrill, Hale, Booth & Ives,* for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRINGTON, THAXTER, JJ.

FARRINGTON, J.    On general motion after verdict for $666.83 returned in favor of the plaintiff in an action to recover for personal injuries received on October 12, 1928, by reason of contact with a truck belonging to the defendant, which was being driven by one Philip S. Roak, admittedly the agent of the defendant. The accident occurred in Auburn, Maine, near the entrance to the Norris-Hayden Laundry on the easterly side of a street known as Mechanics Row. The plaintiff, a salesman of Maine Baking Company, was driving a Dodge delivery truck with panel body and open on the sides with a load of six wooden boxes and fifteen pasteboard boxes piled up on the truck to a height of about five feet from the floor. Having occasion to procure laundry at the Norris-Hayden plant, the plaintiff parked his truck about a foot from the Laundry building, the truck being headed northerly and its rear end being at the northerly end of the entrance to the Laundry.

The defendant was driving a Dodge panel truck in a, southerly direction on Mechanics Row and, the street at his right toward the westerly curb being somewhat rough and muddy, he was travelling at a distance estimated by the plaintiff as from eight to ten inches and by the defendant himself as from fifteen to eighteen inches from the plaintiff's truck. The defendant stated that he first saw the plaintiff when he stepped out from behind his truck and that

at that time the plaintiff was looking over his left shoulder toward the Laundry building. There is nothing in the evidence to indicate that the defendant was driving at a rapid rate of speed; on the contrary, it clearly appears that he had his car under control, as the evidence shows that after the impact the truck moved only about four feet before it was stopped.

From the plaintiff's testimony it appears that he came out of the Laundry building, with a package of laundry, and started towards the rear of his parked truck. He testified that as he came out of the Norris-Hayden building he glanced back, asserting that before he came to the end of his truck his head was turned to the front and that he then put out his leg about eight or nine inches beyond the truck "to look out" and that "by the time I went to look out this truck came back close to my truck, and hit me in the knee, . . ." On cross examination the plaintiff said that as he came from the building into the street toward his truck he would not say that he was running but stated, "I should say trotting down there. . . . A little faster than a regular walk." In reply to this question, "You kept on at that same way down there out of the building onto the level of the street?", he answered, "I did.", and in reply to the question, "And out by the rear of your truck toward the middle of the street?", he answered, "I did." The plaintiff having stated that his own truck completely obscured his own vision of anything coming down from the northerly direction, also admitted that nobody coming from that direction could see him, because he was hidden behind his truck. Plaintiff admitted looking back over his left shoulder at Perry W. Hayden, who was in a window in the Laundry building south of the entrance, saying that he was three or four feet from the building when he did this, but said that when he was about a couple of feet from the end of his truck he looked to the front but that he was "still going," "just a little faster than regular walking." In answer to the question, "You were still in motion, going forward, around the corner of your truck, when you hit something?", plaintiff replied, "Somebody hit me; yes." And in reply to the question, "You were still in motion forwards when you and the automobile hit each other?", he replied, "Yes, I put out my leg to look."

Harlan R. Proctor, who was employed at the Laundry on the day of the accident, said that he saw the plaintiff come out of the Laundry office and start down the stairs and testified that the plaintiff "was hurrying." He watched him only to the point where he went through the doors onto the street, his attention being then called in another direction and next he heard Mr. Hayden "holler" and he looked out and saw the plaintiff "sitting on the ground."

Perry W. Hayden, the proprietor of Norris-Hayden Laundry, testified that he was sitting in a window at the left of the door out of which the plaintiff passed to the street; that the window was open and he said, "I could see everything that happened in the street." He testified that the plaintiff was about three feet out from the door when he first saw him and that the plaintiff was walking fast and that he looked back at the witness and "kind of nodded and waved his hand" and that the plaintiff's head was turned toward him; that the plaintiff was looking over his left shoulder and "was going"; that the plaintiff "deliberately walked into the truck." The witness positively states that the plaintiff was looking at him at the time he struck the automobile of the defendant and in reply to the question, "Had he up to that time turned around to look into the street, from the time you first saw him looking until the time he ran into the car?", the witness replied, "No." The witness also testified that the first he saw of the Roak truck was when the plaintiff was waving to him and that because he saw the danger he "hollered" and said "Look out!".

In our opinion it is unnecessary to consider the question of whether or not the defendant was guilty of negligence. Careful scrutiny of the testimony of the plaintiff himself not only fails to satisfy us that he was free from contributory negligence but lends added weight to the testimony given by the defendant and by Mr. Hayden to the effect that the plaintiff was looking toward the Laundry building when the accident happened. We are unable to escape the conclusion that the plaintiff was not using that degree of care which a reasonably prudent man should have used with due regard for his own safety when he came out from behind his truck. The testimony of Mr. Hayden, who must in all fairness be regarded as a disinterested witness, is entitled to most serious con-

sideration and to our minds clearly shows that the plaintiff was guilty of negligence.

After full consideration of all the evidence and giving to the plaintiff's testimony all the weight to which it is legally entitled, and resolving in favor of the plaintiff all reasonable inferences which may be drawn therefrom, we can not escape the conclusion that the plaintiff negligently left a place of safety behind his truck and stepped directly into the moving truck of the defendant.

In the case of *Cooper & Company* v. *American Can Company*, recently decided by this Court, 130 Me., 76, the Court says, "There can be no recovery if Mr. Crosby stepped out by the bumper from a position of safety and obscurity, without taking the precautions that due care for his own protection demanded. In the protection of his person or property when about to emerge from a position of security and step onto a travelled highway a pedestrian must exercise due care."

In the opinion of the Court, it is unnecessary to give consideration to the paper signed by the plaintiff in which he made certain statements as to his conduct at the time of the accident, as the evidence outside of that statement satisfies us that the jury erred in finding a verdict for the plaintiff. With full recognition of the fundamental rule applying to jury findings, we feel that in this case the verdict was not justified by the facts appearing in evidence.

Without deciding the question of the defendant's negligence, we find that the plaintiff's own negligence is a bar to his recovery and the entry must therefore be,

*Motion sustained.*
*New trial granted.*