MARY E. BECHARD, ADMINISTRATRIX *vs.* MAURICE LAKE.

Kennebec.     Opinion, February 9, 1940.

386

*F. Harold Dubord*, for plaintiff.
*Perkins & Weeks*, for defendant.

Sitting : Barnes, C. J., Sturgis, Thaxter, Hudson, Manser, JJ.

Manser, J. On plaintiff's motion for new trial. Plaintiff's intestate, Eugene E. Bechard, while walking on the highway, was instantly killed as the result of collision with an automobile operated by the defendant. Suit was brought under the death-liability statute. Under R. S., Chap. 96, Sec. 50, the person for whose death action is brought is presumed to have been in the exercise of due care at the time of all acts in any way related to his death, and if contributory negligence be relied upon as a defense, it must be pleaded and proved

by the defendant. The defendant pleaded such contributory negligence.

It is incumbent upon the plaintiff to prove negligence on the part of the defendant. If such negligence is proved, it is incumbent upon the defendant, if he would avoid liability, to prove contributory negligence on the part of the plaintiff's intestate as a proximate cause of the injury. This shifting of the burden of proof works no change in the underlying principles of law. If the plaintiff's intestate's own want of ordinary care is proved to have been contributory to his death, plaintiff can not prevail. *Jones* v. *Manufacturing Co.*, 92 Me., 565, 43 A., 512 ; *Levesque* v. *Dumont*, 117 Me., 262, 103 A., 737 ; *Cullinan* v. *Tetrault*, 123 Me., 302, 122 A., 770 ; *Danforth* v. *Emmons*, 124 Me., 156, 126 A., 821 ; *Field* v. *Webber*, 132 Me., 236, 169 A., 732 ; *Ward* v. *Power & Light Co.*, 134 Me., 430, 187 A., 527.

Negligence and contributory negligence as a general rule are essentially jury questions. Ordinarily it is from a consideration of the facts and circumstances that a determination is reached as to whether the conduct of the defendant was free from negligence, or whether there was contributory negligence on the part of the plaintiff's intestate which would constitute a bar to recovery of damages. Unless proven specific acts constitute negligence as a matter of law, then the fundamental rule of due care has application and decision must depend upon the factual situation presented in a given case, and unless conclusion of the jury is so manifestly contrary to the law and the evidence that it clearly could not be reached by reasoning minds, that conclusion must stand. *Sturtevant* v. *Ouellette*, 126 Me., 558 at 560, 140 A., 368 ; *Dougherty* v. *R. R. Co.*, 125 Me., 160, 132 A., 209 ; *Shaw* v. *Bolton*, 122 Me., 232, 119 A., 801.

Summarized, the evidence in the present case showed that Eugene E. Bechard was a healthy man, 61 years of age, a long time employee of the Maine Central Railroad Co., at the time of his death a checker in the yard office at Waterville, and having occasion in the performance of his duties to go at times from his office to the railroad station, a comparatively short distance away. His hours of duty at this period were throughout the night.

The yard office and railroad station are contiguous to double or parallel tracks of the railroad, which run northeasterly and south-

westerly through the City of Waterville. These tracks cross diagonally College Avenue, a broad cement surface street. The avenue, running approximately north and south, is level and straight at the locality in question. In daylight a person standing in the vicinity of the crossing has an unobstructed view for half a mile in either direction.

The yard office is northerly of the crossing and southerly is the railroad station, across from which is the present location of Colby College. There is no sidewalk at the railroad crossing on either side of the street. For the protection of the public the railroad company maintains three signal lights, two on one side and one on the other side of the crossing and street. These are always illuminated, showing red if a train is approaching and green if not. All these signal lights are visible to a pedestrian approaching from the railroad yard.

It was upon or near this railroad crossing that the fatal accident occurred on August 25, 1938, shortly after midnight, standard time. The area was fairly well lighted, but there was a "drizzling" rain. In this connection the medical examiner testified:

"Q. What was the condition of the night when you got there?
A. It had been raining. It was very cloudy. The visibility was poor."

The only eyewitness to the accident, aside from the persons involved, was Mr. McClay, called by the plaintiff, who was an attendant of a gasoline filling station located some two hundred feet northerly of the crossing and back from the cement surface of the highway at least fifty feet. This witness was about to leave the station temporarily to obtain a lunch at a nearby restaurant. He saw the defendant drive by, going south. He started on foot in the same direction. His testimony then continues:

"A. And as I started down I see this man in front of the car. It seemed as if he had seen the car and was scared when he see it, and just seemed to freeze right there in front of it, threw up his hands, and that is all there was to it.
Q. Did you see the light of the Lake car pick up the man?
A. Yes, sir.

Q. From the time you saw the lights pick him up until the time he was hit, how much time elapsed?

A. Well, I don't believe there was any.

Q. How is that?

A. I don't think there was any.

Q. Did you hear Mr. Lake sound his horn at any time prior to the blow?

A. No, I didn't.

Q. Did you see him put on his brakes?

A. No."

This witness in direct examination estimated the speed of the car at thirty miles per hour. On cross-examination he said the defendant was driving at a moderate rate of speed. He recognized the car with its outside aerial equipment and also recognized the driver, the defendant, Lake.

The defendant's version on direct examination of the actual happening of the accident is as follows:

"A. I was proceeding down College Avenue at what I thought was a reasonable rate of speed and it seems as though from nowhere a man appeared, and that is about all there was to it. I mean I struck him before I had time to do anything about it."

and in cross-examination:

"Q. Now as I understand it, as you were coming down the street there you say all of a sudden a man appeared as if from nowhere in front of you?

A. That is right.

Q. That is, when you first saw him he was right in front of you in your pathway?

A. Yes.

Q. And there was nothing for you to do, you couldn't do anything to avoid an accident?

A. That is right."

Mr. Bechard was dressed in dark clothes. He was carrying in his hands papers spoken of as waybills. It is undisputed that he was

evidently going from the yard to the railroad station in the performance of his duties. The signal lights were green. There is no evidence of other pedestrians or of vehicular traffic on the highway at the time, except that the defendant testified he met one car going northerly in the opposite direction to himself just before he got to the crossing. According to the defendant and the witness, McClay, the defendant was travelling upon his right-hand side of the cement surface and it does not appear that his car was swerved from its course before the impact.

The medical examiner testified that the nature of the injuries was indicative of a severe blow. Practically every bone in the face and skull was fractured and there was a protruding fracture of the left leg.

No oral evidence was presented as to Mr. Bechard's actions prior to the impact.

Careful scrutiny of the testimony appears to warrant the foregoing resumé as presenting all the essential facts concerning liability which were submitted to the jury. Upon this state of facts the plaintiff argues that the verdict for the defendant was clearly wrong and requires the intervention of the Court for the reasons that:

It must have been based on misapprehension, bias or prejudice.

The negligence of the defendant was clearly shown.

The defense did not sustain the burden of proof as to contributory negligence on the part of the plaintiff's intestate.

The jury must have drawn inferences which were based upon mere conjecture or surmise.

Under our well-established procedure, the general verdict returned for the defendant does not disclose what conclusion, if any, was reached with reference to negligence on the part of the defendant. If decision rested upon that element alone, it might be difficult to sustain, but no opinion thereon need be expressed. Assuming such negligence, it is still essential to determine whether the jury erred in finding proof of contributory negligence on the part of the plaintiff's intestate.

There were no exceptions to the charge of the presiding Justice

and the premise is therefore established that the jury was properly instructed as to the rules of law applicable. The underlying and basic rule by which the conduct of the plaintiff's intestate must be determined is whether the facts showed a want of the care which ordinarily prudent men would use under like circumstances. Application of this general rule to specific instances and situations analogous to those at bar aids in demonstration. Foot passengers, in crossing a street, must make such use of their senses as the situation demands. They can not move blindly on, oblivious to everything about them. *Welch* v. *St. Ry.*, 116 Me., 191, 100 A., 934: "One is bound to see what is obviously to be seen." *Clancey* v. *C. C. P. & L. Co.*, 128 Me., 274, 147 A., 157 ; cognizance by pedestrian of duty to safeguard his person as he passes from position of safety and obscurity to open roadway and into pathway of automobile lawfully on his side of street, *Cooper* v. *Can Co.*, 130 Me., 76, 153 A., 889 ; *Beaucage* v. *Roak*, 130 Me., 114, 153 A., 894 ; "Had he looked up the street he must have seen the car approaching and had he been attentive he must have seen the lights projecting their rays by the rear of the team in season to have avoided his peril." *Levesque* v. *Dumont*, 116 Me., 25, 99 A., 719, 720.

Other illustrative cases as to the exercise of due care by pedestrians are: *Colomb* v. *P. & B. Ry.*, 100 Me., 418, 61 A., 898 ; *Tibbetts* v. *Dunton*, 133 Me., 128, 174 A., 453 ; *Whalen* v. *Mutrie*, 274 Mass., 316, 142 N. E., 45 ; *Schmeiske* v. *Laubin et al.* (Conn.), 145 A., 890 ; *Matulis* v. *Gans*, 107 Conn., 562, 141 A., 870 ; *Paskewicz* v. *Hickey*, 111 Conn., 219, 149 A., 671.

But the plaintiff places particular emphasis upon the contention that the defendant did not overcome the presumption of due care on the part of plaintiff's intestate at the time of all acts in any way related to his death because there was no testimony from any witness as to what he was actually doing until the moment of impact. Ergo, conclusion was reached entirely from inferences based on mere conjecture and not upon facts, contra to the rule as laid down in *Seavey* v. *Laughlin*, 98 Me., 517, 57 A., 796 ; *Mahan* v. *Hines*, 120 Me., 371, 115 A., 132 ; *Bennett* v. *Thurston*, 120 Me., 368, 114 A., 459, and cases cited in Note 33 in 95 A. L. R. 182 relating to inferences. This rule is stated in *Mahan* v. *Hines*, supra: "When it is sought to establish a case upon inferences drawn from facts, it

must be from facts proven. Inferences based on mere conjecture or probabilities will not support a verdict."

With the principle thus enunciated the defendant agrees. Reply is that it is without application here. As said in *Mahan* v. *Hines*, supra: "An arbitrary rule as to the burden of proof (in death cases) does not change the common experience of mankind on which the presumptions of negligence in this class of cases are based."

The following physical facts were either not controverted, or were fairly shown: Plaintiff's intestate was walking in the performance of his regular work over familiar territory; no train was approaching; the railroad signal lights showed green, allowing motorists to continue across the tracks, and were observable to a pedestrian approaching the highway; he was not at a street junction, or upon a cross walk; he was in full possession of his perceptive faculties; he was dressed in dark clothes; he was emerging upon the highway from comparative obscurity, because of night darkness, cloudy sky and rain; the highway he was to cross was level and straight in both directions; there was but one automobile approaching the crossing; its headlights were on; it was upon its own right side; it continued in a direct course; it was not travelling at excessive speed.

Upon these physical facts the jury was justified in reaching the conclusion that the fatal accident would not have happened if the plaintiff's intestate had been in the exercise of due care. As said in *Fernald* v. *French*, 121 Me., 4, 115 A., 420, 421:

"In coming to a reasonable conclusion, not only the testimony but circumstances and conditions must be considered. . . . So, in this case, the manner of the accident furnishes inherent evidence of what took place, when construed in the light of the law applicable to this class of cases."

*Motion for new trial overruled.*