HELEN GOSSELIN
LAWRENCE R. GOSSELIN
*vs.*
DANIEL R. COLLINS

(Two Cases)

Androscoggin.   Opinion, April 11, 1952.

*Harris M. Isaacson,* for plaintiffs.

*Frederick P. Armstrong, Jr.,*
*Robinson, Richardson & Leddy,* for defendant.

SITTING:  MURCHIE, C. J., THAXTER, FELLOWS, MERRILL,
NULTY, WILLIAMSON, JJ.

WILLIAMSON, J.   These tort actions are before us after jury verdicts for the plaintiffs on exceptions to the refusal of the presiding justice to direct verdicts for the defendant.   The cases arise from an automobile accident in which the plaintiff, Helen Gosselin, was severely injured when she was struck by an automobile operated by the defendant while she was crossing Main Street in Lewiston on a cross walk in front of the Empire Theatre.   The plaintiff, Lawrence E. Gosselin, husband of Helen, seeks to recover for medical expenses and other damage resulting from his wife's injuries.   The cases were tried together and present identical issues apart from damages which the defendant does not here question.   For convenience we will treat the cases as one and speak of Mrs. Gosselin as the plaintiff.

Does the evidence with the inferences reasonably drawn therefrom taken most favorably to the plaintiff, warrant findings by the jury (1) that the defendant was negligent, and (2) that the plaintiff was in the exercise of due care?

"The issue is liability.   It must be resolved with full recognition of the principle that the facts must be viewed in the light most favorable to the plaintiffs, giving them the benefit of every justifiable inference."   *Wiles, et al.* v. *Connor Coal & Wood Co.,* 143 Me. 250, at 252, 60 A. (2nd) 786, at 787.

Is the evidence in support of the plaintiff's position, "substantial, reasonable, coherent, and consistent with circumstances and probabilities"?   *McCully* v. *Bessey,* 142 Me. 209, at 212, 49 A. (2nd) 230, at 232.

Illustrative statements of the governing principles applied in pedestrian cases are as follows:

"Whether under any particular circumstances, whatever the speed of a motor vehicle colliding with a pedestrian on a crosswalk may be, the operator of it, or the pedestrian, is

using due care are questions of fact for jury determination, except in cases where the pedestrian enters the path of the vehicle so abruptly as to give its operator no opportunity to see him and avoid hitting him. Typical exceptions are found in such cases as *Milligan* v. *Weare,* 139 Me. 199; 28 A. (2nd) 463; and *Wiles* v. *Connor Coal and Wood Co.,* 143 Me. 250; 60 A. (2nd) 786. The general rule was well stated in *Shaw* v. *Bolton,* 122 Me. 232; 119 A. 801, as follows:

> "what ordinary care and prudence demands and whether the conduct of the traveler conforms to such demand are questions of fact to be left to the judgment of a jury."

This statement, made with reference to a pedestrian struck by an automobile while he was crossing a street, applies with equal force to the operator of a motor vehicle at a crossing for pedestrians." *Lange* v. *Goulet,* 144 Me. 16, at 19, 63 A. (2nd) 859, at 860.

"To paraphrase, (the pedestrian) did his full duty if he waited until it reasonably appeared that a prompt crossing could be safely effected if approaching automobiles were lawfully managed and controlled.

- - - - - - - - - -

"A jury might find that the defendant's automobile was down the street such a distance when the deceased left the curb that an ordinarily prudent man would have deemed it safe to attempt the crossing." *Sturtevant* v. *Ouellette,* 126 Me. 558, at 562, 140 A. 368, at 370. See also *Wetzler* v. *Gould,* 119 Me. 276, 110 A. 686; *Ross* v. *Russell,* 142 Me. 101, 48 A. (2nd) 403; *Day* v. *Cunningham;* 125 Me. 328, 133 A. 855; *Haskell* v. *Herbert,* 142 Me. 133, 48 A. (2nd) 637; 2A Blashfield Cyc. of Automobile Law and Practice, 276, 277, Sec. 1411 "Pedestrians—Contributory Negligence."

Main Street, in the area with which we are concerned near the Empire Theatre, is a main artery of travel running in a general easterly and westerly direction with a

slight down-grade to the west. The street has a black surface and is 46 feet in width from curb to curb. White lines marked (1) the cross walk 8 feet in width, (2) the center of the street from each side of the cross walk, dividing the street into east and west-bound traffic lanes, and (3) parking spaces 7½ feet in width on the north or theatre side of the street commencing 18 feet west of the cross walk. In front of the theatre extending to the parking space was a "no parking" zone. The view to the east from the cross walk is clear and unobstructed for a distance of 250 feet to 300 feet. The weather at the time of the accident was clear and the street was dry and fully and completely lighted.

The plaintiff was struck by the front of defendant's car at the right of the center of the hood, and was thrown or pushed by the collision so that she was pinned or wedged beneath a car parked in the first space. The defendant's car was at all times in the west-bound traffic lane. It is apparent, therefore, that the plaintiff had proceeded several feet beyond the center of the street when she was struck. The defendant did not blow his horn.

There is no dispute in the record upon the facts stated above. Whether the defendant brought his car to a stop 35 feet or 85 feet west of the cross walk, a point upon which there is some doubt, is not, in our view, material for purposes of decision.

The evidence of the plaintiff in substance is as follows:

Mr. and Mrs. Gosselin, together with Mr. and Mrs. Blanchard, were on their way to the first moving picture show of the evening. The plaintiff and Mrs. Blanchard left the car in which they were passengers on the south side of Main Street. They stepped into the street on the cross walk, found there was traffic coming from the west and returned to the curb. When the south half of the street was clear of traffic they again started to cross, noting that there were

no cars approaching from the east. About half way across the street the plaintiff glanced again to the east and saw the defendant's car at or near the east end of the bridge, known as the Canal Bridge, 140 feet distant. The plaintiff says that she believed she had ample opportunity to reach the theatre or north side of the street and continued on her course. Just before she was struck she noticed the car was "right on top of me" and she could not move.

Mrs. Blanchard walking behind the plaintiff at some point looked to her right and saw a car coming onto the bridge. When she next saw the car it "was on top of us —me, and I jumped back."

The defendant described his actions in the following words:

"I was coming down Main Street. Before I got onto the Bridge I noticed people crossing the street on the Bridge so I slowed down there, but they didn't cross so I continued on until I got about 15 feet from the crosswalk. I got about at Island Avenue and I saw some people on the crosswalk so I thought they were waiting for me to go by, so when I got about 15—maybe 10 or 15 feet from the crosswalk there were two girls run out in front of me."

Island Avenue enters Main Street from the north, with its west line about 35 feet east of the cross walk and 100 feet west of the east end of the Canal Bridge. It was at this point that the people whom the defendant first noticed were crossing from the south to the north side of Main Street. They stopped in the middle of the street to permit the defendant to pass.

Estimates of the defendant's speed vary from slow and less than 20 miles per hour by the defendant, to "a fairly rapid clip" by an east-bound motorist passing the defendant at the bridge, and "a terrific rate" by a pedestrian cross-

ing the street a few steps behind the plaintiff and her friend. A police officer said defendant told him, when asked how fast he was going, "I slowed down on the bridge, I don't know."

It will serve no useful purpose to rehearse the many conflicting details in the record. There can be no doubt that the jury was justified in finding the defendant was negligent. He was proceeding on a busy city street in an area with which he was thoroughly familiar and was approaching a cross walk of which he was fully aware. There seems to be no excuse for his failure to see the plaintiff and the others on the cross walk until he was within 35 feet.

The bite of the case lies in the question of contributory negligence. Was it lack of due care on the part of the plaintiff as a matter of law to proceed on a cross walk to the north side of the street in the belief that the defendant's car would be so driven that she would not be placed in danger? What was the situation? When the plaintiff was about half way across the street did she stop and then dart, or dash, or run in front of the defendant's car when it was close upon her? If so, she was negligent. Or did she, observing the defendant's car approaching from the east, as a reasonably prudent person under the circumstances proceed to cross the west-bound traffic lane in the belief that she could safely pass in front of the oncoming automobile?

Accidents take place within seconds. Wide variance in impressions of time, distance, position and speed, to name only a few of the factors calling for observation and judgment, are to be expected. Parties and the witnesses equally honest and intelligent will not agree. The advantage to the fact finder in seeing and hearing witnesses need not be elaborated.

Liability does not rest upon acceptance of the plaintiff's version in every detail. From a careful review of the rec-

ord we are convinced that a jury could find that the plaintiff, at some point in crossing the street, observed the defendant's car approaching at such a distance and at such an apparent speed that she was justified in continuing to cross the street. We cannot say a jury would err (or in these cases did err) in finding for the plaintiffs.

The entry will be in each case

*Exceptions overruled.*