## ANDREW J. MOULTON

*vs.*

## SANFORD & CAPE PORPOISE RAILWAY COMPANY.

### York.    Opinion February 27, 1905.

*Contributory Negligence.    Conflicting Testimony.    Verdict Set Aside.*

No rule of law is better settled in this state than the one which declares, if a person, by his own negligent acts, contributes to the accident in which he is injured he cannot recover for the injuries so received.

The general rule is that when the testimony is conflicting the verdict must stand but a conflict of testimony cannot be said to arise simply because one witness testifies contrary to another.

The rule cannot be so construed. It means that there must be substantial evidence in support of the verdict. Evidence that is reasonable and coherent and so consistent with the circumstances and probabilities in the case as to raise a fair presumption of its truth when weighed against opposing evidence.

On motion for a new trial by defendant.    Sustained.

Case to recover damages for personal injuries sustained by the plaintiff through the alleged negligence of the defendant. Verdict for plaintiff for $1644. Defendant filed a general motion for a new

trial, and also a motion for a new trial on the ground of newly dis-
covered evidence. The latter motion was not considered.

The case is stated in the opinion.

*E. P. Spinney*, for plaintiff.

*Allen & Abbott*, for defendant.

SITTING: EMERY, WHITEHOUSE, STROUT, SAVAGE, PEABODY,
SPEAR, JJ.

SPEAR, J. This is an action on the case to recover damages for
personal injuries sustained by the plaintiff through the alleged negli-
gence of the defendant in running its electric car at an unreasonable
rate of speed, in approaching, in the opposite direction, the plaintiff
with his team, thereby frightening the plaintiff's horse and causing
the injuries of which he complains.

No rule of law is better settled in this state than the one which
declares that, if a person, by his own negligent acts, contributes to
the accident in which he is injured, he cannot recover for the injuries
so received. We think the plaintiff's case comes clearly within this
rule.

Admitting the negligence of the defendant, which we doubt, the
evidence shows that the negligence of the plaintiff clearly contributed
to the accident causing his injuries. The verdict of a jury is, of
course, a very strong barrier to overcome. The general rule is that
when the testimony is conflicting the verdict must stand. But a con-
flict of testimony cannot be said to arise simply because one witness
testifies contrary to another. If it was so held hardly a verdict could
ever be set aside. It would be difficult to imagine a case that had
been dignified with the verdict of a jury that would not present some
conflict of testimony. Besides if such were the rule it would only
be necessary to secure the evidence of a witness, however false, to
hold a verdict once obtained.

The rule cannot be so construed. It means that there must be
substantial evidence in support of the verdict,—evidence that is rea-
sonable and coherent and so consistent with the circumstances and
probabilities in the case as to raise a fair presumption of its truth

when weighed against the opposing evidence. When it is over-whelmed by the opposing evidence a verdict cannot stand. *Roberts* v. *Boston & Maine R. R.*, 83 Maine, 298.

If the verdict is regarded as clearly and manifestly against the evidence it will be set aside. *Gilmore* v. *Bradford*, 82 Maine, 547; *Cosgrove* v. *Kennebec Light & Heat Co.*, 98 Maine, 473. When the evidence viewed in the light of the circumstances surrounding the whole transaction so strongly preponderates against the plaintiff upon points vital to the result as to amount to a moral certainty that the jury erred in the conclusion reached by them, the verdict should be set aside. *Smith* v. *Ins. Co.*, 85 Maine, 348.

In *Cawley* v. *La Crosse R. R.*, 101 Wis. 150, the court say: "If there was anything in plaintiff's evidence, standing alone, tending to show that she had passed two or three teams before, and we say there is not, the rule of law often announced, that the testimony of an interested party contrary to the facts otherwise conclusively established in the case and all reasonable inference from the situation disclosed by the evidence, does not raise a conflict requiring a finding by the jury." *Flaherty* v. *Harrison*, 98 Wis. 559; *Badger* v. *Janesville Cotton Mills*, 95 Wis. 599.

The plaintiff's contention in this case is that on the 16th day of March, 1903, he was driving along a public street in Kennebunk Village on his way from the Boston & Maine freight depot towards his home, with a barrel of coal in his wagon; that his horse had always been perfectly kind around the electric cars; that when he had arrived at a point opposite the house of Mr. James Stone, and crossed the railroad track to the northerly side of the road, the defendant's electric car, which is alleged to have caused the accident, was coming from Kennebunkport and was just below and beyond the curve at the foot of the hill; that the plaintiff and the defendant's car con-tinued to approach each other until about 400 feet apart when the car swung around the curve at the foot of the hill, which gave the car the appearance, at this point, of coming head on to the plaintiff's team.

The plaintiff at this time was more than an hundred and thirty yards distant from the car, yet he says his horse, hitherto safe and

used to the cars, displayed great fear, pranced and stood up, and that he waved his hand to the conductor to stop, but that the conductor paid no attention; that he tried to control his horse and did until the car was passing him, when his horse swung from the road and in so doing the hub of the nigh hind wheel struck a trolley pole, swinging the horse northerly across the ditch and up the bank where the carriage struck an elm tree, throwing the plaintiff out, and severely injuring him. The defendant controverts the plaintiff's position on every point and affirmatively asserts, 1, that the plaintiff's horse was not well broken and kind but uncertain and vicious; 2, that the plaintiff when approaching the car was negligent in his manner of driving; 3, that his carriage did not strike an electric pole, claimed to have been negligently set too near the travelled part of the way; 4, that the car was moving up a 4 per cent grade at a slow rate of 4 or 5 miles an hour. The weight of evidence was with the defendant upon all of these propositions, and overwhelmingly so in one or more involving the defendant's own negligence as a contributory, if not the proximate, cause of the accident.

The plaintiff was a blacksmith and had in the hind part of his democrat wagon, as it is called, a barrel of coal. When he crossed the track at the top of the hill he says he was driving his horse with his left hand and steadying the barrel with his right. This testimony of the plaintiff, himself, clearly indicated that, while driving along the road entirely unmolested, the barrel was unsteady and required holding. It is not denied by the plaintiff, and is shown by all the witnesses upon this point, that the barrel remained in the wagon during all the escapades of the horse including his crossing the ditch and climbing a steep bank, so that the coal was "dumped along side of the tree on the bank," as one witness testifies and others corroborate.

In the light of these unquestioned facts the plaintiff says, at about half way between the house of Stone and the pole with which he collided, he released his hold upon the barrel and used both hands in driving his horse.

In contradiction of the plaintiff's unsupported testimony upon this point McGovern, the motorman, and Freemont Allen, who is in no

way connected with the defendant, both testify positively that when the plaintiff passed the front of the car, an instant before his horse bolted, he was driving with his left hand and holding the barrel of coal with his right, in just the manner the plaintiff admits he was driving at first.     Upon this vital point in the case, whom does the fact that the coal was not dumped until the wagon reached the tree, corroborate?     Because the place where dumped is a powerful physical fact bearing upon the truth of this contention.     It may be possible, but it is not probable, that a barrel of coal, which would not sit in the wagon upon the wrought part of the highway, without the plaintiff's hand to support it, could have remained in the wagon, unsupported, while the horse bolted across the ditch and up the bank.     The fact that the barrel, under the circumstances, staid in the wagon until it reached the tree, makes the conclusion well nigh irresistible, that the plaintiff was not only holding the barrel when he passed the car, but continued to do so until his wagon struck the tree and was partially overturned, thereby dumping the coal.

We think the testimony of the two witnesses, and that of the situation surrounding the accident, the truth of which cannot be gainsaid, conclusively prove that the plaintiff was negligent in the manner of driving his horse and that his negligence contributed to the cause of his injuries.

The plaintiff, it will be observed by the testimony, claims that the wheel of his wagon struck an electric pole, which had been set so near the travel of the road as to constitute negligence on the part of the defendant, and that had it not been for the proximity of this pole to the road, and his collision with it, he might have passed the car without accident, notwithstanding the fright of his horse.     It was not necessary that he should prove any collision with the pole, to render the defendant liable, if it was negligent as charged and he was exercising due care.     But the evidence is overwhelming that the plaintiff's carriage did not collide with the pole.     This contradiction casts a doubt either upon the honesty or correctness of the plaintiff's narrative of the accident.

As it is unnecessary to pass upon the question of the defendant's negligence, the rate of speed of the car becomes immaterial except as

bearing upon the fairness of the witnesses. Balch, the plaintiff's witness, says the speed was 5 or 6 miles an hour, and his estimate is not in serious conflict with that of the defendant's. But, upon the character of the plaintiff's horse, a sharp controversy arose to which we allude in view of its bearing upon the credibility and candor of the plaintiff. He first testified to the good qualities of the horse. Then when speaking of throwing up his hand to signal the motorman, he says, "After I threw up my hand, I took my horse, of course I paid strict attention to the horse, as I knew him." Knew him how? Does a kind horse need strict attention? After he was injured, and suffering mental and physical pain several witnesses testified to his declaration as to what his wife had told him in regard to using the horse, which was in substance, "my wife told me that horse would break my bones if I didn't get rid of him." On cross examination he denied that he made any such declaration.

Q. Ever make any remark to this effect, or this substance; that my wife told me that if I didn't sell this horse it would break my neck or my leg sometime? A. No sir, My wife didn't tell me any such words. Q. I didn't ask you that, but did you make any such remark? A. No sir; I did not. But this remark was testified to by four witnesses and the plaintiff on redirect undertakes to break the force of his flat contradiction of so many witnesses by what we feel obliged to call an evasion.

He was cross examined as follows:—

Q. You remember your testimony in cross examination when you were on before, you remember what you testified to fully? A. In regard to what? Q. Do you remember when I asked you the question in regard to making this statement of saying that your wife's name wasn't mentioned? A. I did not mention my wife's name. At what time? Q. In the cross examination when you were on the stand yesterday I asked you if you didn't make such a remark that your wife said so and so and don't you remember that you said that your wife's name wasn't mentioned? A. I remember that I said that I never mentioned my wife's name, yes; I did not. Q. You have just testified that you did mention your wife's name? A. I think not. Q. Very well. A. My wife's name is Mattie

A. Moulton, if you please. Q. Then you want the jury to understand that you get around it in that way? A. Well, I understand exactly as I said it you know; I told it exactly as I knew; I wasn't unconscious at the time; I was conscious of every thing that was done. Q. I didn't know what your wife's name was. I asked you if you didn't—A. I took it that you meant my wife's name. Q. You want the jury to understand that that is the way you get around it? A. I am not trying to get around it. Direct examination resumed. Q. You didn't call your wife by name nor mention her name, did you? A. No sir; I did not. Q. You don't understand that you have now when you said, "My wife said"? A. I merely said "my wife."

The original statement by the plaintiff that he did not mention his wife's name was not brought out on cross examination but upon the direct resumed. The effect, however, is exactly the same as the plaintiff so treated it in the above examination.

It is perfectly apparent that the plaintiff when he asserted that he did not mention his wife's name, intended to deny that he made any such statement with respect to what his wife had said, as the several witnesses had attributed to him. He undoubtedly meant that he did not mention the name, wife, and hence could not have made a statement as coming from her. This palpable evasion detracts much from the confidence to be placed in the plaintiff's whole story, especially, when it comes in conflict with other consistent and apparently reliable testimony.

A full analysis or even a summary of the evidence, is impracticable within the reasonable scope of an opinion, and would subserve no practical purpose beyond a decision in this case. The plaintiff's contention in this case is so shaken by the inherent weakness of his own testimony and so strongly contradicted by the positive testimony of witnesses and by the situation and circumstances surrounding the accident as to compel the conclusion that the jury erred in finding a verdict for the plaintiff.

*Motion sustained. New trial granted.*