NATHANIEL HASKELL, ADMR. *vs.* STUART HERBERT.

Cumberland.    Opinion, July 23, 1946.

*Wilfred A. Hay,*

*Mayo S. Levenson,* for plaintiff.

*William B. Mahoney,* for defendant.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MURCHIE, TOMP-
KINS, JJ.

HUDSON, J.    This is an action of negligence brought by the ad-
ministrator of the deceased, one Fred A. Morin, under the pro-
visions of Chap. 152, Sections 9 and 10 of the Revised Statutes
of 1944 (known as Lord Campbell's Act), to recover damages for
death without conscious suffering of Mr. Morin. At the close of
the testimony, counsel for the defendant moved for a directed
verdict, which was granted. To this ruling the sole exception re-
lates.

It is elemental that

> "A verdict should not be ordered by the trial court when,
> giving the party having the burden of proof the most favor-
> able view of his facts and of every justifiable inference, dif-
> ferent conclusions may fairly be drawn from the evidence by
> different minds. *Young* v. *Chandler,* 102 Me., 251."

*Collins* v. *Wellman,* 129 Me., 263, on page 264. Also see *Johnson*
v. *Terminal Co.,* 131 Me., 311, 312, 313; *Gould* v. *Transporta-
tion Co.,* 136 Me., 83, on page 84; *Collins* v. *Maine Central Rail-
road Co.,* 136 Me., 149, on page 151; and *Gold* v. *Portland Lum-
ber Corp.,* 137 Me., 143, 144.

Sec. 50 of Chap. 100, R. S. 1944, provides:

> "In actions to recover damages for negligently causing

the death of a person, or for injury to a person who is deceased at the time of trial of such action, the person for whose death or injury the action is brought shall be presumed to have been in the exercise of due care at the time of all acts in any way related to his death or injury, and if contributory negligence be relied upon as a defense, it shall be pleaded and proved by the defendant."

In *Bechard, Adm'x* v. *Lake,* 136 Me., 385, also a death liability case based on Lord Campbell's Act, it is stated on page 387:

"It is incumbent upon the plaintiff to prove negligence on the part of the defendant. If such negligence is proved, it is incumbent upon the defendant, if he would avoid liability to prove contributory negligence on the part of the plaintiff's intestate as a proximate cause of the injury."

So in the case at bar the plaintiff to recover would have the burden to prove negligence of the defendant as the proximate cause of the death of the deceased, and if proved, the defendant would have the burden to overcome the presumption of due care upon the part of the deceased.

The accident happened at about 7:30 o'clock in the evening of January 2, 1945, approximately in the middle of Veranda Street where Whittier Street enters it from the north. Veranda Street "is a through way, being the main travel artery entering Portland from the east," and is a part of U.S. Highway Route No. 1. It is 42 feet in width between curbs with an electric car line running along its center. As one travels easterly on Veranda Street in that section he comes to Whittier Street entering from the north, then Olympia Street and further on Oregon Street, both entering from the north. Opposite the entrance of Whittier Street into Veranda Street there is a manhole between the rails of the electric car track. On the south side of Veranda Street approximately 87 feet easterly of the manhole there is a bus-stop. Here Veranda Street curves slightly to the south. But ample vision is

possible in each direction on Veranda Street from where this collision took place. There are some buildings delineated on the plan on the north side of Veranda Street in this locality but none on the south side until the Tydol station is reached on the south side of the street just westerly of the Marine Hospital.

From the evidence introduced the jury could have found these facts: that Mr. Morin boarded a bus near the City Hall in the city of Portland and rode in it until he alighted therefrom at the bus-stop above mentioned; that he then proceeded along the side of the bus to its rear, where he started to cross Veranda Street to the north, and when he reached the southerly rail and entered the area between the two rails of the electric car track, he was hit by the defendant's automobile, which was proceeding westerly along Veranda Street at an approximate speed of 25 miles per hour; that the defendant, with his lights on, did not see Mr. Morin at all before the collision and then not until, having swung his car to the north curb of the road (his windshield having been shattered by contact with some object), he had gotten out of it and had come back where he found Mr. Morin's body lying between the rails in the middle of the road close to a pool of blood just easterly of the manhole; that the defendant, before reaching the bus-stop, had been driving westerly on the northerly side of Veranda Street in the northerly half thereof, which half in width was at least 18 feet, but for some unknown reason had swerved his car to the south into the area between the two rails of the car track, and but for this turning, had he been attentive, he might have proceeded northerly of the rails and averted any collision at all.

Under the foregoing facts, was a case presented that should have been sent to the jury for factual determination on the issue of negligence? We think so.

If it were true that lights of approaching vehicles blinded the vision of the defendant, that only increased his duty of care. In *Day* v. *Cunningham*, 125 Me., 328, this Court said on pages 330 and 331:

"The jury may have reasoned that the defendant should have applied his brake when he became blinded ·by the street car's glaring headlight, without waiting until he saw the plaintiff (to quote his language) 'right out in front of my radiator' when it was too late to save her. Such reasoning was not erroneous.

" 'It is the duty of a driver of an automobile to stop his car when for any reason he cannot see where he is going.' . . .

" 'No man is entitled to operate an automobile through a · public street, blindfolded. When his vision is temporarily' destroyed (by a glaring light) it is his duty to stop his car.' "
Also see *House* v. *Ryder*, 129 Me., 135, 139.

The jury would also have had the right to consider the fact that the defendant was approaching a bus-stop where a bus had stopped of which he knew or should have known. In *House* v. *Ryder*, supra, this Court said on pages 139 and 140:

"Not only must he expect passengers on the side of the car from which they alight, but he must anticipate that some passengers may pass behind the car to the other side. *Day* v. *Cunningham*, supra, 125 Me., 328. If the motorist seeks to avoid the charge of negligence on the ground that he is unable to know whether the street car has stopped to accommodate passengers, because of the glare of the light on the street car, or for other reasons, the reply is that he must not recklessly proceed upon his way under circumstances of doubt, he must know or, failing to know, should bring his car to a stop as in cases where his vision is blinded by a glare."
Also see *Blanchette, Adm'x* v. *Miles*, 139 Me., 70, 72.

The jury under these facts might have found him to be driving inattentively, although not at excessive speed, and that he did not have his automobile under such control as he should have had in such a place of danger. We consider that there was ample evi-

dence of negligence to require the submission of this case to the jury on that issue.

The burden of proving contributory negligence upon the part of the deceased being placed by the statute on the defendant as above stated, was this presumption overcome by him? We think not. After leaving the rear end of the bus, the deceased started to cross the street. He was not bound to anticipate that the defendant's automobile would be turned from the northerly half of the street and be steered onto the rails when the defendant had 18 feet of the street on which to proceed without danger of collision with the deceased.

> "It is not a reasonable inference from any proven facts to assume that the deceased was negligent when he had arrived at a point where he was beyond the danger of being struck by a car which had ample opportunity to proceed on the right hand side of the street." *Ramsdell, Admin.* v. *Burke,* 140 Me., 244, 249.

The only eye witness to the collision was Miss Semple, offered by the defense, and her testimony is strongly corroborative of the position taken by the plaintiff both as to negligence and lack of contributory negligence. She testified that Mr. Morin in starting to cross the street had only reached a place between the two rails when he was hit. She saw the defendant swerve his car onto the rails where the deceased was. He then was in a place of safety and would have continued so to have been had not the defendant left the 18-foot wide lane northerly of the car tracks, crossed over to the position of the deceased, and run him down.

Consequently, viewing the evidence in the case in the light most favorable to the plaintiff, as well as every justifiable inference, and believing that at least different conclusions might fairly be drawn from the evidence by different minds (*Collins* v. *Wellman,* supra, 129 Me., 263), and that there was sufficient evi-

dence to justify the jury in finding a verdict for the plaintiff which could have been held by him (*Johnson* v. *Terminal Co.*, supra, 131 Me., 311), we hold error in the direction of the verdict for the defendant.

*Exception sustained.*
*New trial ordered.*

Fellows, J., did not participate.