GEORGE S. HUNT
DOUGLAS HERSEY
MILDRED F. HERSEY
*vs.*
EMILE BEGIN AND ALBERT CEDRIC DOW

(Three cases)

Penobscot. Opinion, March 17, 1953.

*Edward Stern,* for plaintiff.

*James E. Mitchell,*
*Richard J. Dubord,* for defendant Begin.
*James M. Gillin,* for defendant Dow.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

WILLIAMSON, J. These three automobile accident cases were brought by guests in the Begin car against the defend-

ants Begin and Dow. The cases, tried together, are before us after verdicts against both defendants on exceptions by Begin to the refusal of the presiding justice to direct verdicts in his favor. It is admitted that the plaintiffs were in the exercise of due care.

The issue is whether the jury was warranted in finding negligence on the part of Begin. Under the familiar rule we take the evidence with the inferences properly drawn therefrom in the light most favorable to the plaintiffs. If reasonable men and women could find Begin was negligent, the verdicts must stand. We are not, of course, a second jury.

The principle has been stated and applied recently in *Bernstein* v. *Carmichael,* 146 Me. 446, 82 A. (2nd) 786; *Gamache* v. *Cosco,* 147 Me. 333, 87 A. (2nd) 509; *Gosselin* v. *Collins,* 147 Me. 432, 87 A. (2nd) 883; *Crockett* v. *Staples,* 148 Me. 55, 89 A. (2nd) 737.

From our examination of the record with the plan and photographs, we are of the view, without going into detail, that the jury could have found substantially the situation herein described.

The accident took place in Etna on U. S. Route No. 2 in daylight on the afternoon of October 2, 1951 within one hundred feet westerly from a mail box on the north side of the highway. Route No. 2 is a main highway with a paved surface twenty feet in width. There is a "down grade" from the top of a rise seven hundred fifty feet easterly of the mail box with a grade of 6%, a steep grade in the opinion of the surveyor who prepared the plan, ending at the mail box at the foot of the grade. From the top of the rise Route No. 2 stretches westerly for a half mile in a straight line with no obstructions to vision at any point. The weather was clear. The pavement was damp after a rain, but it does not appear that the condition of the highway had any bearing upon the accident.

There were three vehicles involved in the accident. Begin, with the plaintiff passengers, was driving westerly from Bangor on the "down grade" at a speed of fifty to fifty-five miles per hour. The Dow truck was stopped at the mail box, headed westerly and entirely off the pavement. The Merrill Transport Company tractor and trailer, or gasoline truck, was proceeding easterly toward Bangor and approaching the Dow truck and the Begin car at a speed of forty miles per hour.

This was the situation when the Begin car was three or four car lengths easterly, and the Merrill truck one hundred fifty feet westerly, of the mail box. They were about two hundred feet apart and approaching to pass at a combined speed of ninety or more miles per hour. At this moment Dow, without warning or signal, started westerly from the mail box and within at most no more than a few feet turned his truck in front of the Begin car. The Begin car first struck the left rear of the Dow truck and then the left side of the Merrill truck which was advancing in the eastbound traffic lane, or south half of the pavement. The great and damaging force of the collision with the Merrill truck is apparent from the photographs.

In the emergency both Begin and the driver of the Merrill truck applied their brakes and sought to avoid a collision. Tire marks led one hundred twelve feet to the point where the Begin car stopped on the pavement headed easterly. The Merrill truck turned to the right and came to a stop within about sixty feet with the tractor off the highway.

Begin did not blow his horn on approaching the Dow truck, nor did he reduce his speed. He testified "Well, I was quite a ways off and I did notice that pick-up truck on the right-hand side; we see often on the highway somebody parked on the side; so I just kept on going." He did not, so he said, see the Merrill truck.

Some weeks after the accident Begin, so plaintiff Douglas Hersey testified, said "He asked me how my mother was (plaintiff Mildred F. Hersey), and I was, and he said he felt kind of sleepy on the way home and he guessed it was his fault in a way." Begin vigorously denied any admission of this nature. The jury, however, was entitled to believe the plaintiff Douglas Hersey and to give weight to the evidence in reaching their conclusion.

No question is raised about the negligence of Dow. It is apparent that the Begin car and the Merrill truck would have passed near the mail box without incident, each in its own traffic lane, had not the Dow truck entered the picture.

Neither speed, nor failure to blow his horn to warn Dow, nor road conditions, nor admissions of sleepiness point, says the defendant, to negligence on Begin's part in the slightest degree, or in any event sufficiently to warrant the jury's finding. The entire fault, the only negligence, so the argument runs, lies in the negligence of Dow, who created the emergency in which Begin was an innocent participant.

Begin, in our view, places too narrow limits upon the cause of the accident. We may agree that the acts of Begin from the instant Dow drove his truck in front of Begin do not alone spell negligence. Probably he did as well as anyone could have done to escape from danger.

The question, however, is not only what part Begin played after the danger became immediate, but what part, if any, did he have in creating the emergency. If he was not in the exercise of due care when suddenly the Dow truck entered his traffic lane, he cannot complain that his negligence and that of Dow were found to be proximate causes of the accident.

What was the situation ahead of Begin when he came over the rise seven hundred fifty feet easterly of the mail

box and the Dow truck? He must be charged with knowledge not only of what he saw, but of what he should have seen. His judgment and the acts or failure to act springing from his judgment must be tested in light of this knowledge.

The jury could find that Begin as a reasonably prudent man should have considered at least the circumstances here mentioned.

In normal course he would pass the Merrill truck at the base of the grade near the position of the Dow truck. Should the Dow truck turn into the highway in front of him, he would place himself and his guests in a position of extreme danger. Indeed, he could have anticipated in such an event precisely what in fact did happen. He could not stop in the westbound lane without colliding with the Dow car; nor could he turn into the eastbound lane without colliding with the Merrill truck.

The Dow truck was stopped at a mail box. Such stops are usually made for a brief period. The approaching driver could well expect that when the truck moved, it would turn into the westbound traffic lane at a slow speed. The pavement was wide enough for two vehicles but not for three. Begin chose to rely wholly upon Dow remaining off the pavement until he passed the Merrill truck.

Could the risk of collision under the circumstances have been avoided by Begin in the exercise of due care? In our view the jury was justified in finding negligence on the part of Begin arising from his speed or from the failure to blow his horn to warn Dow.

Begin's speed calls for explanation. Under the statute a speed in excess of forty-five miles per hour at the scene of

the accident was "prima facie evidence that the speed is not reasonable and proper." *R. S. Chap. 19, Sec. 102, Par. II.* (Amendments in P. L., 1949, Chap. 38, Secs. 7 and 8, and P. L., 1951, Chap. 292, Sec. 3, are not here material). His speed was thus evidence in itself of negligence, but of course it was not necessary for the plaintiffs to tie their claims of negligence in speeding to a violation of the statute.

Begin had ample opportunity to reduce his speed to the end that he would not pass the Merrill truck at or near the Dow truck. Why did he not slow down so that he would first pass the oncoming Merrill truck, thus leaving the east-bound lane open in passing the Dow truck?

Or why did not Begin give Dow warning by blowing his horn? Begin did not, it is true, violate the "audible warn-ing" statute, for he did not, certainly of his own will, pass or attempt to pass the Dow truck when it was "proceeding in the same direction." *R. S., Chap. 19, Sec. 103.* (An amendment in P. L., 1947, Chap. 86 is not here material.) The jury, however, was not prohibited from considering that a failure to give warning was negligence under the cir-cumstances. Could they not have concluded that had Begin blown his horn—a simple act—Dow would have been warned of Begin's approach, and that thus the accident would have been prevented?

The admission of sleepiness by Begin suggests that the true cause of the accident was the inattention of Begin, to-gether with Dow's negligence. Why did not Begin see the Merrill truck? Why was he so lax in his attention to on-coming traffic? Begin could have avoided so much risk with so little effort.

We cannot say as a matter of law that a driver travelling at a high speed to pass an oncoming truck in blind reliance that a parked truck will not turn in front of him is in the exercise of due care.

The jury measured the defendant against the standard of the reasonably prudent man under the circumstances, and found him lacking. The verdicts must stand.

*Exceptions overruled.*