EARL D. SANBORN
*vs.*
CHARLES L. STONE

Cumberland.   Opinion, January 27, 1954.

*James H. McCann,*
*Clinton T. Goudy,* for plaintiff.
*Robinson, Richardson and Leddy,* for defendant.

SITTING: MERRILL, C. J., THAXTER, FELLOWS, WILLIAMSON, JJ. TIRRELL AND WEBBER, JJ., did not sit.

FELLOWS, J.   This is an action for negligence wherein the jury in the Cumberland County Superior Court rendered a verdict for the plaintiff in the sum of $16,000. The

case comes to the Law Court on the defendant's general motion for a new trial, except that no claim is made that damages are excessive.

The testimony is conflicting, but the principal facts that the jury could find from the record are briefly these: On February 6, 1952, at about 5:30 in the afternoon, an automobile owned and operated by Charles L. Stone, the defendant, struck and severely injured Earl D. Sanborn, the plaintiff, then engaged in shoveling slush and snow at the entrance of his own driveway at 1468 Washington Avenue in Portland. It was necessary for the plaintiff to shovel so that the water running in the street and along the ditch would continue past his driveway and not freeze in it. If the water froze in the driveway it was very difficult to drive in with an automobile without getting a start from across the street.

The plaintiff was a mechanic, 49 years of age, whose home had been here on the westerly side of Washington Avenue for more than a dozen years. He arrived home from work about 5:10 P.M. on this day. Washington Avenue, in front of the plaintiff's house and driveway, is black macadam. The street runs northerly and southerly, and the macadam is 36 feet, 6 inches wide, with a surface crowned in the center for drainage. There is a clear and unobstructed view for 1200 feet in a northerly direction and for 800 feet in a southerly direction. The grade is southerly and very slight. This section of the city is a built-up portion and residential.

On the westerly side of the street, northerly and southerly of the plaintiff's driveway, snow had been pushed aside or piled by the city plows. This plowing had caused a margin of snow four or five feet out from the westerly edge of the highway and five or six inches deep, although witnesses disagree as to width and depth. Outside of the snow, and on the edge of it, a stream of water two feet wide was flow-

ing southerly. Some water was coming into the driveway. The traffic was using the bare part of the way between snow bank and water on the western side, and the bare eastern side of the way—approximately twenty-nine feet wide.

The plaintiff says he was shoveling at a point two feet from the westerly line of Washington Avenue and two feet southerly from the northerly line of his driveway. He looked southerly and saw the lights of an approaching car, which was a car of one Graffam. Then looking northerly the plaintiff saw the lights of an automobile over 200 feet distant (which was afterwards determined as the defendant's), and this car the plaintiff says was then traveling near the center of the highway.

The plaintiff was shoveling snow and slush out of the entrance of his driveway and near the edge of the highway and under a street light. The traffic was using the portion of road that was free of snow. The defendant coming from behind him, according to the plaintiff, must have swerved toward him into the snow and struck him. There was no warning given by the defendant driver. The plaintiff heard the defendant's automobile hit the snow behind him, but he did not have time to straighten up. After striking the plaintiff, the defendant swerved to the left, went about 70 feet, and struck the approaching Graffam car, forcing the plaintiff further along with him before he stopped his car.

The defendant, who was 74 years old and who has been a physician for 50 years, told the police that "he was driving south on Washington Avenue and he was blinded by the lights of an oncoming car and he hit a man and another car." The defendant could not remember that he so told the police. The defendant's signed report said "car coming toward me with bright lights." The defendant testified that he saw "something in the road ahead but could not determine what it was" and after this he saw that there was a man 10 or 15 feet away, but he did not attempt to stop un-

til he hit the man and crashed into the side of the other car. He says he swerved and tried to avoid, instead of trying to stop.

The testimony describing the exact point where, and the manner how, the plaintiff was standing with relation to the side of the road, and how and where, and at what speed the defendant was proceeding with relation to the snow and water on the westerly side of the way, and whether the defendant's car swerved to right and then left, was conflicting, as is usual in automobile cases. The measurements of the engineer tend to show that, from the point where plaintiff was hit to the point where the defendant stopped his car, was 182 feet in a direct line. The testimony shows that the plaintiff was carried along by and with the defendant's car 90 feet after the defendant's car hit him, and that the defendant's car after it dropped the injured plaintiff at the side of the road, went 92 feet further before it stopped. The defendant claimed that the plaintiff was out in the dry portion of the road "leaning somewhat forward as if in the act of stooping," and that he, the defendant, was driving in the dry part of the way at the statutory speed of 25 miles an hour. The defendant said "I could see him from his knees up," which might indicate to the jury that the plaintiff was in the snow as the plaintiff testified. The plaintiff said he was only two feet out from the edge of the highway in the strip of snow, or snow bank, where no traffic had been proceeding.

The defendant claims no negligence on his part, and that the plaintiff's negligence was the cause, or contributing cause of the accident. The damages were severe but no question is raised as to the amount being excessive.

The defendant "estimates" he was traveling at a speed of 25 miles per hour, but from what happened, and the distance traveled before stopping, together with the testimony of other witnesses that the car "zipped by" and was going

"very fast," the jury would be justified in finding that the speed was greater. If he was going at a speed of 25 miles, as he says, was it excessive under the circumstances, should he have seen the plaintiff sooner, should he have stopped if blinded, and did he have his car under proper control when he saw "something" ahead and did not then know what it was?

As to the plaintiff's care, it depends on where the plaintiff was and what he was doing at the time. Was he in the exercise of ordinary care at the time and under the circumstances? Was he where he testified that he was, at the entrance of his driveway and about two feet from the westerly edge of the highway, and was this negligence, or was he on the dry part of the macadam near the center of the way which traffic was then using, as the defendant says?

The evidence here is to be viewed in the light most favorable to the plaintiff. *Daughraty* v. *Tebbets*, 122 Me. 397, 120 A. 354, and general rule is that when the testimony is conflicting the verdict will stand. *Moulton* v. *Railway Co.*, 99 Me. 508, 509, 59 A. 1023; *Spany* v. *Cote*, 144 Me. 338, 343; *Gosselin* v. *Collins*, 147 Me. 432.

Where no exceptions are taken to the charge of the presiding justice, it is presumed that the charge correctly presented to the jury the applicable propositions of law. *Barlow* v. *Lowery*, 143 Me. 214, 219.

The burden which the proponent of a motion to overturn a verdict assumes, has been long and often declared. In determining the issue the Law Court must proceed upon the theory that the jury had a right to accept the testimony of the plaintiff's side as true, and to reject all the testimony of the defendant's side as untrue, mistaken, or unsatisfactory, unless the testimony, including the circumstances and probabilities, reveals a situation that proves the testimony on the plaintiff's side to be inherently wrong. *Daughraty* v.

*Tebbets,* 122 Me. 397, 398; *Eaton* v. *Marcelle,* 139 Me. 256; *Huntoon* v. *Wiley,* 142 Me. 262, 49 A. (2nd) 910.

A general motion for a new trial, is based on the proposition that injustice will plainly be done if the verdict is allowed to stand. It is a motion that asks that the verdict be set aside because it is against the evidence, and the weight of evidence, and that it is against the law, and that the damages are excessive (no excess of damages is claimed here). Under our system, if a jury hears and determines disputed facts, that determination is final, unless so clearly wrong that it is apparent that the verdict was the result of prejudice, bias, passion, or a mistake of law or fact. The court cannot, and does not, pass upon credibility or number of witnesses. If the evidence in support is substantial, reasonable, coherent, and consistent with circumstances and probabilities, the verdict should stand. The values of conflicting bits of testimony are for the jury, and the burden of showing, to the satisfaction of the court that the verdict is manifestly wrong, is upon the one seeking to set it aside. *McCully* v. *Bessey,* 142 Me. 209, 212. *Towage Co.* v. *State of Maine,* 142 Me. 327.

Violation of law, if proven by the evidence, is sometimes prima facie evidence of negligence, and as otherwise expressed, raises a presumption of negligence. While not conclusive, the defendant must overcome the presumption against him. *Rouse* v. *Scott,* 132 Me. 22, 164 A. 872; *Nadeau* v. *Perkins,* 135 Me. 215, 216.

One may assume at all events, until the contrary appears, that approaching automobile will be driven carefully. The plaintiff is not bound to anticipate negligence on the part of their drivers. *Davis* v. *Simpson,* 138 Me. 137, 145; *Ross* v. *Russell,* 142 Me. 101, 105.

No man is entitled to operate an automobile when his vision is destroyed by a glaring light, it is his duty to stop

his car. He must not proceed upon his way under circumstances of doubt. He must know what is ahead, or failing to know, should bring his car to a stop. *Cole* v. *Wilson,* 127 Me. 316; *House* v. *Ryder,* 129 Me. 135; *Haskell* v. *Herbert,* 142 Me. 133; *Spang* v. *Cote,* 144 Me. 338, 344.

The jury may have reasoned that the defendant should have applied his brake when he became temporarily blinded by lights (if he was blinded), without waiting until he saw the plaintiff in front of his radiator when it was too late to save him. Such reasoning was not erroneous. *Day* v. *Cunningham,* 125 Me. 328, 330, 331. Section 34, Chapter 19, R. S., 1944, provides that automobile must be equipped with front lamps capable of rendering any substantial object clearly discernible at least 200 feet ahead and at the same time at least 7 feet to the right of the axis of such vehicle for a distance of at least 100 feet.

It is agreed that the locus of this accident is within the definition of "compact or built up" as set forth in Subsection IV of R. S., Chapter 19, Section 102, as amended by 1949, Chapter 38, Sections 7, 8, and 1951, Chapter 292, Section 3. Accordingly the prima facie lawful speed limit at the scene of the accident was 25 miles per hour. Revised Statutes, 1944, Chap. 19, Sec. 102, Subsection II, Para. C.

The Law Court cannot substitute its own judgment for that of the jury when there is sufficient evidence upon which reasonable men might differ in their conclusions. *Frye, Lounsbury* v. *Kenney,* 136 Me. 112; *Perry* v. *Butler,* 142 Me. 154, 161; *Esponette* v. *Wiseman,* 130 Me. 297, 155 A. 650; *Shannon* v. *Baker,* 145 Me. 58, 71 A. (2nd) 318; *Daughraty* v. *Tebbets,* 122 Me. 397, 398; *Mizula* v. *Sawyer,* 130 Me. 428, 430; *Eaton* v. *Marcelle,* 139 Me. 256; *Wyman* v. *Shibley,* 145 Me. 391, 79 A. (2nd) 451.

This is true even though it may seem to the Law Court that the evidence as a whole preponderates against the jury

finding. *Barlow* v. *Lowery,* 143 Me. 214, 220; *Jannell* v. *Myers,* 124 Me. 229, 230.; *Burchell* v. *Willey,* 147 Me. 339.

While the standard of care required is that which would be exercised by an ordinarily prudent person, it is only that degree of care which such person would use under the same circumstances. *St. Johnsbury Trucking Co., Inc.* v. *Rollins,* 145 Me. 217.

It is not the care of the very careful person, nor is it the care of the careless person. It is the care to be used under the circumstances by a person who is ordinarily careful and prudent. *Torrey* v. *Congress Square Hotel,* 145 Me. 234, 244. As a practical proposition this "ideal" man of ordinary foresight and prudence is usually a composite picture drawn from the combined ideas, knowledge, feelings, and experiences of the members of a jury, which picture may exonerate from blame, or fix a liability. Negligence, therefore, is the failure, in the opinion of the jury, to act as would the usual and prudent man of ordinary intelligence. *Towage Co.* v. *State,* 142 Me. 327, 334.

We have examined carefully the excellent and comprehensive brief filed by counsel for the defendant and have considered the cases cited therein. No case is called to our attention that varies the rules above stated. The case of *Mahan* v. *Hines,* 120 Me. 371, 378 cited by defendant, was an action for death and no living person testified as to how it happened, or whether the deceased fell off or jumped off the train, and the court held that "inferences based on mere conjecture or probabilities will not support a verdict." In *Cooper* v. *Can Company,* 130 Me. 76, 87, the pedestrian comes out from a position of complete obscurity, suddenly and directly into the path of the car and was struck. In *Page* v. *Moulton,* 127 Me. 80, the pedestrian "took a chance of crossing the street between two passing automobiles then thirty feet apart." In *Bernstein* v. *Carmichael,* 146 Me. 446, a six year old minor was found injured under parked car,

no witness saw him crossing the road, and no direct evidence that he was struck by defendant's car—the scintilla rule does not apply in Maine. In *Shea* v. *Hearn,* 132 Me. 361, the question whether automobile of the defendant went off the road because of excessive speed, or because of inattention, or by reason of failure to keep it under proper control, was left to the jury to determine. The cases cited by defendant of *House* v. *Ryder,* 129 Me. 135, *Haskell* v. *Herbert,* 142 Me. 133, *Cole* v. *Wilson,* 127 Me. 316, *Baker* v. *McGary Transportation Co.,* 140 Me. 190, *Dietz* v. *Morris,* 149 Me. 9, involved the question of headlights or blinding lights, and the rules given above of due care are applied. The case of *Dietz* v. *Morris,* 149 Me. 9, cited by the defendant, affirms the rule in *Spang* v. *Cote,* 144 Me. 338. In *Byron* v. *O'Connor,* 130 Me. 90, cited by defendant, the majority opinion holds the same rule of care to apply in an emergency, and in this case new trial granted because jury not justified to find negligence for applying brakes on a slippery highway under the circumstances. Two justices dissent. In *Milligan* v. *Weare,* 139 Me. 199, a pedestrian crossing street "cannot walk into danger." The case of *Rossier* v. *Merrill,* 139 Me. 174, cited by defendant, involved the care by defendant in a head-on collision where emergency was caused by failure of steering gear of plaintiff's car through breaking of tie rod. In *Tibbetts* v. *Dunton,* 133 Me. 128, plaintiff was changing a tire in the highway and oblivious of approaching traffic. In *Barlow* v. *Lowery,* 143 Me. 214, pedestrian at night, walking on right side of highway with back towards approaching traffic end engaged in conversation with companion. Jury evidently found contributory negligence of plaintiff. Verdict was for defendant.

If we apply the rules of law, stated in the foregoing cases, to the facts as shown by the record in the case at bar, the defendant's motion for a new trial must be overruled.

There was conflicting evidence and the jury has passed upon it. There was testimony tending to show how, when, where, and under what circumstances the plaintiff was working, and there was also evidence to answer the same questions with relation to the defendant's operation of his car that caused the injury. The court might have reached a different conclusion had the case been submitted to the Law Court, on report, in the first instance, but the court cannot now say that the jury verdict is "manifestly wrong." "We are not, of course, a second jury," as was said by Williamson, J., in *Hunt, Hersey* v. *Begin and Dow*, 148 Me. 459, 460.

It does not appear from the record that the verdict was "the result of prejudice, bias, passion, or a mistake of law or fact."

*Motion overruled.*