Leonard W. ROY

v.

Richard H. MERRILL.

Supreme Judicial Court of Maine.

June 22, 1970.

Smith & Elliott by Roger S. Elliott, Saco, for plaintiff.

Thompson, Willard, Hewes & Smith by Richard D. Hewes, Portland, for defendant.

Before WILLIAMSON, C. J., and WEBBER, MARDEN, DUFRESNE, WEATHERBEE and POMEROY, JJ.

MARDEN, Justice.

On appeal from the denial of a motion by plaintiff for a new trial.

Plaintiff complains that he suffered personal injury by reason of being struck by a motor vehicle operated by the defendant. Under the rules of comparative negligence properly submitted to a jury,[1] to

1. Chapter 399 of the Public Laws of 1969 was not then applicable.

which was submitted a special verdict form,[2] the jury found that both parties were guilty of negligence proximately causing the accident to the extent of 50% each. Under the wording of the special verdict submitted, no damages were assessed.

The facts may be summarized as follows:

The scene was the intersection of East Grand Avenue (Grand), running north and south, and Walnut Street (Walnut), running east and west, in the Town of Old Orchard. Grand was 30–40 feet wide. Weather was clear. At about 5 P.M. on August 27, 1966 a fire had broken out in a building located on the corner formed by the south line of Walnut and the east line of Grand. A gasoline service station occupied the corner formed by the intersection of the south line of Walnut and the west line of Grand, with entrances from both streets. Plaintiff was a police officer in uniform called to the scene with instructions to divert traffic south bound on Grand and entering the intersection with Walnut to the west on Walnut. The defendant was a call-member of the town Fire Department and in answering the call in his pick-up truck approached the intersection of Walnut and Grand on Grand from the south. While north bound traffic on Grand was turned off at an intersection southerly of the scene, the defendant, as a fireman, was allowed to pass and as he approached the intersection of Walnut and Grand the fire was in progress, a fire truck was stationed near the easterly side of Grand just north of the intersection with Walnut, people had gathered and the plaintiff was positioned on or near the corner formed by the southerly line of Walnut and the westerly line of Grand. His exact position is in controversy.

Plaintiff states that he was "at least ten good feet" from the filling station corner and uses language to indicate that he was facing the center of the westerly lane (south bound) of Grand as it emptied into the intersection, although he "backed up a couple of times" to move on-lookers back to or toward the sidewalk on the west

2. "1. Was the Defendant, RICHARD H. MERRILL guilty of any negligence which was a direct and proximate cause of the accident in this case?

YES _____.                    NO _____.

NOTE: If the answer to the foregoing question is YES, answer Question 2.

"2. Was the Plaintiff, LEONARD W. ROY guilty of any negligence which was a direct and proximate cause of the accident in this case?

YES _____.                    NO _____.

NOTE: If the answer to Question 1 is YES and the answer to Question 2 is NO, answer Question 4. If answer to Question 1 is YES and the answer to Question 2 is YES, answer Question 3.

"3. What was the percentage of causal negligence attributable to:

A. The Defendant _____%.    B. The Plaintiff _____%.

NOTE: The total causative negligence involved in the accident is to be treated as 100%.

NOTE: If, in the answer to Question 3, the negligence attributable to the Plaintiff is less than 50%, answer Question 4.

"4. What is the amount of damage sustained by the Plaintiff without regard to the answers to any of the prior questions?

_____    Dollars

_____ Cents."

FOREMAN DRAWN JURY

side of Grand. A disinterested witness, Witness D, who was standing in an area which, but for the entrances to the filling station, would have been within sidewalk limits, about 6–7 feet from the south line of Walnut and 2–3 feet from the west line of Grand, places plaintiff about 3–4 feet from him into Grand which would mean 1–2 feet into Grand from the reference corner, and engaged in his assigned duty.

The defendant states that as he approached the intersection, he saw plaintiff, whom he knew, and some 75–100 feet distant, on or near the reference corner "either on the sidewalk, or right beside the sidewalk" with the appearance of talking to someone on the west side of Grand or engaged in moving or keeping a crowd which had assembled, back from the street line.

In the same period of approach, defendant observed that the Fire Chief was attempting to enter the fired building "and seemed to be having a hard time. Looked like smoke had started to bother him or something. And I was concerned about him, and getting parked." As he approached the southerly line of Walnut extended across Grand he veered to the left to make the turn westerly on Walnut and continued his turn to the left to enter the yard of the filling station from the south line of Walnut, where he left his truck.

Witness D became aware of the approaching truck operated by the defendant and shouted a warning to plaintiff, in response to which, plaintiff turned to his right and as he turned the rearview mirror on the left side of defendant's truck struck him on his left side or shoulder. The mirror is what is characterized as a "west-coast" mirror, in that it was larger than the conventional rearview mirror externally mounted on a motor vehicle and was mounted on "braces" extending "about a foot" from the side of the truck. Defendant states that the first knowledge he had of striking anything was when this mirror came back towards the door of the truck as he was in the process of turning the corner. He states that the closest any part of his vehicle came "to where * * (plaintiff) was standing" was "about four feet."

In testing the denial of the motion for a new trial filed by the plaintiff based upon the contention that there was no evidence justifying a determination by the jury that "the Plaintiff's causal degree of negligence was in the amount of fifty (50%) percent," we examine the record to determine if such finding is supported by the evidence. If it is not, the verdict is erroneous as a matter of law. Emery v. Fisher, 128 Me. 453, 457, 148 A. 677, or as said in Spang v. Cote et al., 144 Me. 338, 344, 68 A.2d 823, to determine "whether the verdict * * * is manifestly wrong."

Whether or not plaintiff was negligent, which negligence contributed to his injury depends upon measuring his care by the care which the ordinarily reasonable and prudent man would exercise under the same circumstances. Sanborn v. Stone, 149 Me. 429, 436, 103 A.2d 101. The conduct which constitutes due care may factually vary according to the circumstances. Morgan v. Aroostook Valley Railroad Co., 115 Me. 171, 174, 98 A. 628. One of the circumstances here was that he was a police officer detailed to a special duty, which duty called for his appearance at such place within the intersection as to enable him to divert south bound traffic from Grand westerly on Walnut. Certainly as incidental to that he would be charged with pedestrian safety. This duty also required his attention to be directed to the north which would place him back-to the approaching defendant.

The defendant knew plaintiff as a police officer, saw him at 75–100 feet away in his approach travel and, the conclusion is justified, that thereafter his primary

attention was toward the fire at his right. Defendant urges that from the time he observed plaintiff on or near the sidewalk line to the time he directed his vehicle around the corner some four feet distant from it, plaintiff had to negligently move into the street whereby he was struck. Conceding that upon defendant's testimony plaintiff had to move to be struck, it does not follow that such move was a negligent move.

Whether plaintiff was some two feet into the street, as Witness D testified, or ten feet as plaintiff testified, as defendant approached, his turn in response to D's shout cannot be classified as negligence.

We can find no evidence to support the finding by the jury that plaintiff was 50% at fault or in fault to any degree.

█ While procedurally this case does not fall within the terms of Rule 50 M.R.C.P., where under certain circumstances a verdict may be reinstated on appeal and whereby a new trial, in part, at least, is obviated, the submission of the question of damages to the jury would have in this instance obviated the need of a new trial on such question.

For the reasons stated, appeal is sustained and the case remanded to the Superior Court for hearing in damages.

So ordered.