**Lewis E. H. MILLS, Plaintiff,**

v.

**PENN CENTRAL COMPANY, Defendant.**

**Civ. A. No. 2453-69.**

United States District Court, District of Columbia.

July 23, 1971.

John W. Karr, Washington, D. C., for plaintiff.

James Hamilton, and Margery W. Smith, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

YOUNGDAHL, Senior District Judge.

After a verdict of $273,020.00 for plaintiff in a personal injury suit, defendant, Penn Central Company, moves the court to grant a new trial or in the alternative to order a substantial remittitur.

Defendant alleges four grounds in support of this motion: (1) the jury flagrantly disregarded the court's instructions; (2) The verdict is against the weight of the evidence; (3) The court erred in failing to give a portion of defendant's proposed instruction; and (4) The court erred in refusing to allow defendant to inquire into plaintiff's failure to submit to a more recent psychiatric examination.

Plaintiff, Lewis E. H. Mills, brought this personal injury suit, alleging permanent physical injuries to his back, permanent mental injury, and other injuries as a result of an accident on September 1, 1966. Because defendant conceded the issue of liability, the jury by agreement was instructed that it should not consider the issue of liability but should consider only the issue of what injuries and damages were sustained by plaintiff proximately as a result of defendant's conceded negligence.

As defendant frankly concedes in its brief in support of these motions, much of the evidence presented on the issue of plaintiff's injuries and damages was in direct conflict. Where there is conflicting evidence, as in this case, the court, in considering these motions, proceeds on the basis that the jury had the right to accept plaintiff's evidence as to the injuries and damages he sustained. *See* Grunenthal v. Long Island R. Co., 393 U.S. 156, 158, 89 S.Ct. 331, 21 L. Ed.2d 309 (1968); *see also* Williams v. Kinney, 220 A.2d 234 (Me.1966); Sanborn v. Stone, 149 Me. 429, 103 A.2d 101 (1954); Daughraty v. Tebbets, 122 Me. 397, 120 A.2d 354, 355 (1923).

Considering the evidence in the light most favorable to plaintiff [1] and without attempting to review in detail the testimony in this week long trial, the court finds implicit in the jury's verdict the following summary of facts.

Plaintiff, born on September 27, 1938, was a railway postal employee, assigned to sort mail on a railroad car owned by defendant. On September 1, 1966, while working within one of the stationary railway postal cars, plaintiff was thrown to the floor, as a direct result of an unusually strong bump. This strong bump was caused by the negligence of Penn-Central employees, when coupling two of defendant's railroad cars, a fact which defendant conceded.

Because plaintiff experienced excruciating pain, he secured an authorization form from the Post Office to go to the Public Health Clinic. The first diagnosis at the Clinic was that plaintiff had sustained a back sprain. He was or-

---

1. *See Grunenthal, supra,* 393 U.S. at 158, 89 S.Ct. 331; Chambers v. Tobin, 118 F.Supp. 555 (D.D.C.1954).

dered by the doctors to exercise and undergo therapy.

Prior to this accident, plaintiff had led a life consistent with normal health and physical condition. In July of 1966 he had sprained his back at work, but he had fully recovered from this injury prior to the September 1 accident. He played sports, including semi-professional football; he was a musician of some skill, playing the piano and various woodwind instruments; he played with his four children, taking them to concerts, art galleries, and picnics; and he had a normal work record with the normal occurrences of illness.

Dr. Horner, one of plaintiff's physicians at the Public Health Clinic, diagnosed ailments as chronic back sprain and conversion reaction and further stated with reasonable medical certainty that these conditions resulted from the September 1, 1966, accident. Dr. Ammerman, one of plaintiff's physicians from Group Health Association at George Washington University Hospital, testified that he recommended to the Civil Service Commission that plaintiff was functionally unable to work and acting pursuant to said recommendation the Commission retired plaintiff at his then age of 32 years.

Dr. Smith, one of plaintiff's private physicians, diagnosed plaintiff's difficulties as a compression fracture of the Thoracic-12 vertebra. He prescribed treatment for a spinal fracture. It was his opinion that plaintiff was unable to continue his job because he had a 35% disability. Dr. Borochow, a psychiatrist who examined plaintiff, diagnosed plaintiff's mental condition and attempted to treat it. It was her diagnosis that plaintiff was disabled and not employable for the type of work he had been doing.

Plaintiff tried to perform other jobs within the Post Office, but was unable to withstand the pain while working. He tried to secure employment outside of the Post Office but was unable to get a job due to his physical condition and his status with the Post Office.

Mr. Arkell, a former staff economist at the Post Office and an expert in salary scales for postal employees, computed the future and past loss of earnings plaintiff sustained. These are:

[Using: Age 55 as the retirement age with 30 years' service September 27, 1993, as the retirement date. Computing this period to be 22 years, 3 months and 3 days the pay scales for plaintiff's position and adjusting it for the proper periods of applicability]

| | |
|---|---|
| $9,187.00 | $ 3,650.00 |
| $9,422.00 | $ 4,310.57 |
| $9,657.00 | $206,685.87 |
| Add night differential | $ 21,464.64 |
| | $236,111.08 |
| Pay loss from 9/1/66 to present | $ 17,105.21 |
| Total lost wages | $253,216.29 |

Plaintiff was retired from the Post Office by the Civil Service Commission on March 16, 1970, with a permanent disability which entitled him to receive $220.00 per month. Plaintiff's present age is 33 and for a man of that age the H.E.W. Vital Statistics Chart shows that the life expectancy for an average male of plaintiff's age is 37.5 years.

The court instructed the jury that by agreement between the parties, money if it were invested, would earn 5% per year, and that they were required to reduce to present value any amount for lost future earnings by that 5% factor. An explanation of the use of this 5% figure was given by counsel for defendant in his closing argument. The court further instructed that if the jury found plaintiff to be disabled for any period of time, they were to consider the $220.00 monthly disability payment, and were to subtract from the verdict the amount he would receive monthly for that period of disability, but in no event would this period extend beyond that time at which plaintiff would be retired.

As heretofore stated, the jury returned a verdict in the amount of $273,020.00. The amount indicates that the jury found that plaintiff had proved permanent physical and mental disability as a result of his September 1, 1966,

injuries, and that plaintiff had proved substantial mental anguish, pain and suffering, discomfort, limitation of motion, headaches, and inability to perform the normal functions he had previously performed and would have been able to perform had he not been injured.

Although various standards have been stated to guide the trial courts in considering motions to set aside the verdict or grant a remittitur, the Supreme Court's statement in Barry v. Edmunds, 116 U.S. 550, 6 S.Ct. 501, 29 L.Ed. 729 (1885) sets out the complete standard for the trial court in considering these motions. The Court said:

> [A] verdict will not be set aside in a case of *tort* for excessive damages 'unless the court can clearly see that the jury have committed some very gross and palpable error, or have acted under some improper bias, influence, or prejudice, or have totally mistaken the rules of law by which the damages are to be regulated,'—that is, 'unless the verdict is so excessive or outrageous,' with reference to all the circumstances of the case, 'as to demonstrate that the jury have acted against the rules of law or have suffered their passions, their prejudices, or their perverse disregard of justice to mislead them.' In no case is it permissible for the court to substitute itself for the jury, and compel a compliance on the part of the latter with its own view of the facts in evidence, as the standard and measure of that justice, * * *. *Id.* at 565, 6 S.Ct. at 509.

Although this case is old, it has been cited numerous times and is still the basic law. The United States Court of Appeals for the District of Columbia Circuit in Taylor v. Washington Terminal Co., 133 U.S.App.D.C. 110, 409 F.2d 145 (1969) has recently stated the rule for this jurisdiction. It said:

> In this jurisdiction particularly, District Court judges have given great weight to jury verdicts. They have stated that a new trial motion will not be granted unless the 'verdict is so unreasonably high as to result in a miscarriage of justice,' or * * * unless the verdict is 'so inordinately large as obviously to exceed the maximum limit of a reasonable range with which the jury may properly operate.' *Id.* at 113, 114, 409 F.2d at 148–149.[2]

■ Defendant argues that the jury failed to reduce its verdict to present value and to deduct any disability retirement payments plaintiff would receive. This is purely speculative and has no persuasive value. What must be considered, in determining whether or not this verdict is excessive, is the conclusion that the jury found plaintiff had permanent mental and physical injuries. The monetary measure of worth of plaintiff's pain and suffering, mental anguish, discomfort, headaches, and inability to perform the usual function of a man his age is particularly within the province of the jury where a determination of permanent disability lies at the base of the verdict.

In contending that the jury flagrantly failed to follow the court's instructions on damages, defendant presents a hypothetical computation to prove its argument. Defendant arbitrarily maintains that it is obvious that the figure of $236,111.00 was accepted by the jury as future earnings; the sum of $17,105.00 was allowed for past earnings and "around $20,000.00" for pain and suffering. Using its computation, defendant asserts the present value of $236,111.00, reduced by the 5% figure, is $142,944.-40. One would think that defendant's attorney was in the jury room to hear the discussion in making that assertion with such certainty. Although obligated to use the 5% interest figure, the jury was not bound to accept defendant's computation in reducing the verdict by 5%.

---

2. Citing with approval Graling v. Reilly, 214 F.Supp. 234, 235 (D.D.C.1963); Frank v. Atlantic Greyhound Corp., 172 F.Supp. 190, 191 (D.D.C.1959); *accord,* Preston v. Safeway Stores, Inc., 163 F.Supp. 749, 753 (D.D.C.1958).

What is even more astounding and incredible is the humanitarian impulse of defendant in his computation to allow the sum of $20,000.00 to plaintiff in damages for what defendant described as "pain and suffering." Defendant conveniently overlooks numerous other elements of damages for which the jury could properly determine from the evidence plaintiff had a right to recover, such as permanent physical and mental disability, mental anguish, discomfort, continual headaches, and inability to perform those normal activities plaintiff had previously been able to do.

It is undisputed that plaintiff was declared permanently disabled by the Civil Service Commission at the age of 32. If this fact is kept in mind, the complete fallacy of defendant's argument that the jury allowed only $20,000.00 for pain and suffering is clear. Neither defendant nor the court has any idea what amount the jury allowed as damages for plaintiff's mental and physical disability, pain and suffering, mental anguish, headaches, limitation of motion, and inability to perform normal functions of a man his age.

Even assuming arguendo the computation of defendant as to the loss of plaintiff's past and future earnings to be correct, the court is still not justified in granting a new trial or reducing the verdict because it is excessive. It was stipulated at the trial that the longevity of an average male of plaintiff's age is 37.5 years. Implicit in the verdict is the conclusion that plaintiff sustained permanent physical and mental injuries. Also implicit in said verdict is the fact that prior to the accident plaintiff was a normal healthy individual. Moreover, the court must assume from the verdict that the jury found proximately as a result of defendant's negligence plaintiff became permanently disabled from his employment and unable to perform any of the aforesaid activities he had previously performed.

Despite all these findings defendant contends plaintiff is not entitled to recover approximately $193,000.00, or roughly $5,000.00 per year, for some 37.5 years during which he will endure these hardships. Under these circumstances the court would not be justified in saying that the difference between what the defendant himself finds plaintiff was entitled to recover for past and future earnings and the amount of the verdict is excessive and would not be justified in encroaching upon the function and prerogative of the jury either to grant a new trial or a remittur. Referring again to the Court's language in *Barry,* this court finds, *"with reference to all the circumstances of the case,"* that the verdict is not "excessive or outrageous." [Emphasis supplied].

Defendant also contends that a finding of permanent disability as a proximate result of the injury of September 1, 1966, is "against the clear weight of the evidence." [Defendant memorandum, p. 3]. In maintaining this argument, defendant is merely rearguing the case to the jury. In one breath counsel concedes that the evidence is in direct conflict and in the next breath suggests in effect that the verdict is contrary to the weight of the evidence because the jury did not give as complete credibility to defendant's witnesses as it should have given. It is axiomatic that the jury had wide discretion in determining the credibility of the witnesses and the court would be usurping the function and sole prerogative of the jury if it disturbed this verdict where the court finds there was no clear abuse of that discretion.

Defendant further asserts that the court erred in denying a part of defendant's requested instruction number 4. This allegation of error is without basis. The court gave the law as expressed in Perry v. Capital Traction Co., 59 U.S. App.D.C. 42, 32 F.2d 938, cert. denied, 280 U.S. 577, 50 S.Ct. 31, 74 L.Ed. 627 (1929) in its own language. This is the instruction the court gave:

> If plaintiff has proved by a fair preponderance of the evidence that he suffered physical injuries proximately as a result of defendant's negligence,

and which proximately caused nervous, emotional, or mental disabilities known as conversion hysteria, conversion reaction, or mental disabilities with the similar characteristics as conversion hysteria or conversion reaction, he may recover damages for such effects and disabilities that plaintiff has proved by a fair preponderance of the evidence to be the proximate result of the original injuries.

If plaintiff has failed to prove by a fair preponderance of the evidence that the nervous, emotional or mental disabilities known as conversion hysteria, conversion reaction or mental disabilities with the similar characteristics as conversion hysteria or conversion reaction claimed by him are the proximate result of any physical injuries he sustained proximately as a result of defendant's negligence, then plaintiff may not recover for those alleged mental, nervous or emotional disabilities.

Furthermore, the instruction defendant excised from Hamilan Corp. v. O'Neill, 106 U.S.App.D.C. 354, 356, 273 F.2d 89, 91 (1959) was only one-half of the instruction the court in *Hamilan* was reviewing. The Court of Appeals approved the entire charge as given by the trial court, but it did not say that any part of this charge could be excised and given to a jury without this being ground for error. Since the court gave the law of this jurisdiction in its own language, the court finds no ground for error.

■ Defendant contends that this court erred in refusing defendant the right to cross-examine plaintiff about plaintiff's refusal of defendant's request to submit to a psychiatric examination. The grounds for this ruling are in the record, but a repetition of these reasons is in order. This case was continued early this spring until late May. Just

four days prior to trial, defendant made a motion before Chief Judge John Sirica to compel a psychiatric examination.[3] The grounds for the court's refusal of the motion are unstated, but the ruling was binding on the court.

Clearly defendant was culpable in this matter. Pre-trial was held in September of 1970. Pursuant to the order of the Pre-Trial Examiner, defendant was given the right to have plaintiff examined medically "in the field of any claimed permanent injury."[4] There was, therefore, no restriction in the order prohibiting a psychiatric examination. There was, moreover, no reason for failing to have this examination in the period just after the continuance had been granted when defendant knew that a definite trial date had been set. It is clear from the Pre-Trial statement that defendant knew plaintiff alleged and intended to prove at trial substantial, permanent mental injuries as a result of the September 1, 1966, accident. Defendant was dilatory in waiting *until four days before trial to request a psychiatric examination.*

In denying defendant the right to question plaintiff in this matter, the court considered all relevant factors and concluded it would be error to permit such an inquiry. Defendant has not presented the court any new authority or arguments that persuade the court it was in error. The ruling, therefore, stands, and a new trial on this ground is denied.

■ Defendant asserts that the court should have given an instruction that "the failure to produce more current psychiatric testimony raised a presumption that, if produced, the evidence would be unfavorable to plaintiff's cause." This was denied for three reasons: (1) It incorrectly states the law that a failure to produce more current evidence raises a presumption;[5] (2)

---

3. This is pursuant to the action adopted by the Active Judges requiring the Chief Judge to pass on all continuances from the Senior Judges Pool after a case has been alerted for trial.

4. Pre-Trial Proceeding at 4.

5. *See,* 2 J. H. Wigmore, Evidence § 285, at 162 (3d ed. 1940).

Since the court had foreclosed inquiry into this matter on cross-examination, no instruction on this particular point should be given; and (3) The court gave standard instruction number 17 "Failure to Produce Stronger Available Evidence", which this court felt covered the matter without emphasizing a point into which the court had not allowed inquiry.

For all the above reasons it is ordered that defendant's motion for a new trial or remittitur in lieu of a new trial is hereby, in all respects, denied.